THE STATE OF FLORIDA *ex rel.*, RAILROAD COMMISSIONERS, *Relators,* v. ATLANTIC COAST LINE RAILROAD COMPANY, *Respondent.*

1. The sufficiency of the return to an alternative writ of mandamus may be determined on a motion for a peremptory writ.

2. The constitution and statutes of this State considered together contemplate that the initial discretion as to the opera-

tions of trains shall be those charged with the management of the railroad operations, and that the exercise of such discretion shall be subject to lawful governmental regulation.

3. The difficulty of making a specific enumeration of all such powers as the legislature may intend to confer upon Railroad Commissioners for the regulation of common carriers in the interest of the public welfare, renders it necessary to confer some power in general terms; and general powers given are intended to confer other powers than those specifically enumerated.

4. Relief against an unreasonable and unjust order by the Rail road Commissioners that the running of a regular intrastate train carrying passengers shall not be discontinued, may be had in due course of law; and an unlawful refusal or failure of a railroad company to comply with a valid requirement may be redressed in the manner provided by law.

5. Even if the information necessary to the determination of the question whether a train should be discontinued is not accessible to the Railroad Commissioners except through the railroad company, it does not relieve the Commissioners of the duty to supervise and regulate the operation of trains; nor does it deprive them of any authority they have to acquire the information in the way provided by law.

6. The duty imposed upon railroad companies to make written application to the Railroad Commissioners for their consent before discontinuing any regular intrastate train carrying passengers, is not an unlawful burden upon or a regulation of interstate commerce.

7. Where it clearly appears from the pleadings that a regulation of the Railroad Commissioners is lawful and just, it is not necessary to take testimony upon the subject.

This case was decided by Division A.

This is a case of original jurisdiction.

### STATEMENT.

A motion to quash the alternative writ herein having been overruled, State *ex rel.* v. Atlantic Coast Line Ry. Co., 60 Fla. 465, 54 South Rep. 394, the respondent filed the following return:

"Now comes the Atlantic Coast Line Railroad Company, respondent in the above entitled cause, and answering the alternative writ of mandamus, for answer says:

1. Respondent admits that it is in possession and control of the lines of railroad mentioned in the first paragraph of the said alternative writ, and that it is operating the same as a common carrier of property and persons in this State.

2. It admits that it has operated since July 1st, 1902, and is still operating, many regular intrastate passenger trains in Florida.

3. Answering the third paragraph of the alternative writ, it admits that the Railroad Commissioners of the State of Florida on December 3rd, 1908, after a hearing before them, prescribed Rule 12 of "the Rules Governing the Transportation of Passengers." That this respondent was present at said hearing and protested against the putting into effect of said rule. Respondent admits that it had due notice of the adoption of said rule and that same should take effect January 1st, 1909.

4. Answering the fourth paragraph of the alternative writ, respondent says that without previously applying to the Railroad Commission for consent it has discontinued since January 1st, 1909, certain intrastate passenger trains in Florida, which trains were not passenger trains put on for special occasions, such as fairs, carnivals, conventions, excursions and the like; but that respondent

further answering says that after the discontinuance of said trains, the Railroad Commission of this State gave their consent to and acquiesced in the withdrawal of said trains, thus conclusively demonstrating that in these cases the respondent, in the exercise of its initial discretion, committed no abuse of discretion; and whenever this respondent has discontinued a train, such act has always met with the approval of the Commission.

5. Respondent denies the power of the Railroad Commissioners to prescribe said Rule 12 and denies that there has been any omission of duty on the part of this respondent as to the discontinuance of trains and asserts that by Section 2803 of the General Statutes of the State of Florida the question as to discontinuance of trains is within the discretion of this respondent;

Further answering, respondent says that there is no power in relators to require this respondent to make application to the Railroad Commissioners of this State for their consent when respondent proposes to discontinue a train; that the part of Rule 12 sought to be enforced by the alternative writ involves the details of management and the control of the business of this respondent and is peculiarly within its discretion, for the reason that, when it is desired to discontinue a train, the officials of the Company resort to the following sources of information, which are not accessible to the Railroad Commission, save and except as they may be furnished by this respondent upon making such application, should the Commission have the determination of the question: Reports of conductors and superintendents as to the number of passengers carried for a given time by a given train between given points; reports of Auditor of Passenger Receipts and conductors showing the amount of fare paid by each passenger so carried, and the total income in money from the operation of said trains during said period; expenses of operation, in-

volving also the question of distribution of work among various train crews and the working agreements existing between respondent and the labor organizations to which members of train crews belong; distribution of work among employees so as to comply with the Federal Act relating to hours of service; proposed installation of other trains at different hours which will meet the reasonable requirements of the public convenience.

Moreover, while Rule 12 under consideration does not undertake to apply to the through or intrastate trains operated by respondent, yet the conditions in Florida are such that many of the intrastate trains are put on and taken off with reference to the payment of the interstate tourist train service. Respondent necessarily must be in touch with, and fully advised of, the large and extraordinary volume of business which is handled into Florida on its interstate trains and must, when the tourist travel is proceeding to such a point that the intrastate trains specially provided for this abnormal business are no longer needed and can no longer be operated except at a loss, fix its train movements, arrangements and schedules and change the same so as to provide and eliminate train service which in intrastate business can be justified only on account of the volume of travel brought about by the tourists. It undertakes at all times to afford to the ordinary traveler in the State of Florida all reasonable facilities for transportation commensurate with the volume of business, the growth of the section served and the revenue derived therefrom, and it affords train service fully adequate to the proper requirements of the situation, although at times operating the same at continuous loss. Many of its schedules are made with reference to the business interchanged with other lines, and the volume of that business is dependent upon conditions of the character aforesaid and of the arrangements made with other lines, whereby discontinu-

ances are frequently made on less than ten days notice re-'
quired by Rule 12 before, under the terms thereof, the car-
rier can be authorized by the Commission to discontinue
such service.   In all of the aforesaid matters the wisdom of
continuing the train service is one with which the carrier
is specially familiar and as to which its judgment is
reached upon a broad business plan.    Respondent has
found that upon the discontinuance of any intrastate
train, objection is made by some people who desire a ser-
vice to be continued for their particular benefit which is
clearly against the interest of the carrier and the fair re-
quirements of the carrier's business to continue in force.
In addition, the selfish interests of the carrier would make
it alert to continue any service which it found remunera-
tive, either directly or indirectly, and these indirect or cor-
related benefits are solely within the knowledge of the car-
rier.   Likewise there may be correlated losses or injuries of
which the Commission is not advised and which are only
known to this respondent.   The carrier uses skilled in-
vestigators in securing the information from the sources
hereinbefore mentioned and in reaching conclusions there-
from in the determination of the question of discontinu-
ing a train, and the Railroad Commission cannot give the
same intelligent investigation to the question as is given
by respondent.   As illustrative of the difficulties which the
carrier has to meet in complying with the conditions of
Rule 12, respondent points out that on August 18th, 1910,
it made application to the Commission to discontinue
trains No. 153 and 156, operated between Croom and
Brooksville, and permission to discontinue was granted
by the Commission; and subsequent thereto the Commis-
sion revoked said consent without making proper investi-
gation of the necessities of the public or the returns to the
carrier and instructed respondent to continue said train
service.   And respondent says that, with all due deference

to the Railroad Commissioners of the State of Florida, respondent is of the opinion that the wishes of the occasional traveler have greater weight with said Commission than the conclusions reached after investigation by the carrier as to the actual necessities of the public in a situation of which this respondent is peculiarly informed and of which it should, under the discretion vested in it by law, be the judge.

The facts, together with the sources from which they are derived and the conclusions reached therefrom set out in the foregoing paragraphs are details of management which necessarily cannot, unless furnished by the respondent, be before the Commission when they act upon an application for consent sought to be required by the alternative writ. If this respondent must supply these details to the Railroad Commission—and the question cannot be determined without a knowledge of such details—respondent urges. that the encroachment of the Commission upon the management and control of the Company's business is apparent and cannot be disguised under the name of regulation. If this respondent is forced, whenever it proposes to discontinue a train, to make application to the Railroad Commission for their consent, as provided in Rule 12, it will be forced to supply all these details and the information covered thereby, and forward same to the Commissioners along with application. Therefore, if this respondent is required to make application to the Railroad Commission for their consent to discontinue a train and furnish them the detailed information above set forth, the initial discretion in the matter of taking off the particular train properly vested in respondent will thereby be taken away and become vested in relators."

The relators move to strike the latter part of the fourth paragraph, and severally the first, second, third and fourth

subdivisions of the fifth paragraph of the return, and for a peremptory writ of mandamus.

*L. C. Massey,* for Relators;

*W. E. Kay,* for Respondent.

WHITFIELD, C. J. (*after stating the facts*).—The fourth paragraph of the return is an express admission of the allegation of the alternative writ that the respondent has discontinued some of its regular trains carrying passengers and running wholly within this State, without previously making application to the Railroad Commissioners for their consent thereto. Subsequent averments of this paragraph of the return that the Commissioners had consented to and acquiesced in the withdrawal of such trains, thus conclusively demonstrating that in the exercise by the respondent of its initial discretion no abuse was committed, and that whenever respondent has discontinued a train it had been approved by the Commissioners, may be disregarded since they are not responsive to the alternative writ: The writ does not undertake to redress past acts but only to require the respondent to make application for the consent of the Commissioners whenever in the future the discontinuance of a regular train carrying passengers wholly within this State is contemplated by the respondent in the exercise of its initial discretion in the operation of its railroads in this State. The sufficiency of the return may be determined on the motion for a peremptory writ.

In the former opinion, it was held that "the provision of Rule 12 is sought to be enforced is not an attempted exercise of arbitrary control and management of the respondent's railroad in rendering the public service; nor

does it unduly interfere with the initial discretion of the railroad officials in the operation of trains. It is merely a regulation in aid of lawful efficient supervision within the authority and duty of the Commissioners; and the provision is apparently reasonable. While the initial discretion as to the operation of trains is in those charged with the management of the railroad operations, such discretion is subject to lawful governmental regulation." This holding was made with a full appreciation of the terms of the statutes of the State including section 2803 of the General Statutes of 1906, which provides that "every railroad and canal company shall be empowered * * * to regulate the time and manner in which passengers and property shall be transported," as well as section 2893 of the General Statutes of 1906, which latter section does not limit the authority of the Commissioners to connections at junction points. Any other conclusion would be to subvert the manifest legislative intent in enacting the general and special provisions referred to in the previous opinion, in recognition of the express mandate of the constitution that "the legislature invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or perfoming other service of a public nature."

The difficulty of making a specific enumeration of all such powers as the legislature may intend to confer upon Railroad Commissioners for the regulation of common carriers in the interest of the public welfare, renders it necessary to confer some power in general terms; and general powers given are intended to confer other powers than those specifically enumerated. State v. Atlantic

Coast Line R. Co., 56 Fla. 617, text 645, 47 South. Rep. 969.

As decided in the former opinion, it is within the statutory authority of the Railroad Commissioners in the discharge of their lawful duties of supervision to require the respondent to make application for consent before discontinuing a regular train carrying passengers wholly within this State, and that the enforcement of such a regulation in a lawful manner will not deprive the respondents of any constitutional right. The application for consent offers an opportunity for a useful discussion between the railroad officials and the Commissioners of the conditions that suggest the discontinuance of a train, tending to prevent arbitrary action and to secure governmental recognition of the discontinuance of a train in which the traveling public have an interest.

Relief against an unreasonable and unjust requirement by the Commissioners that a train be not discontinued, may be had in due course of law; and an unlawful refusal or failure of the respondent to comply with a lawful requirement may also be redressed in the manner prescribed by law for that purpose.

The suggestion that the information necessary to the determination of the question whether a train should be discontinued is not accessible to the Commissioners except through the respondent, does not relieve the Commissioners of the duty to supervise and regulate the operation of trains; nor does it deprive them of any authority they have to acquire the information in the way provided by law.

The duty here inforced is not an unlawful burden upon or a regulation of interstate commerce, since it is in terms confined to intrastate service; and its effect, if any, upon interstate commerce is merely indirect, incidental and

immaterial. State v. Atlantic Coast Line Ry. 56 Fla. 617, text 663, 47 South. Rep. 969; Southern Ry. Co. v. Atlanta Sand & Supply Co., 135 Ga. 35, 68 S. E. Rep. 807 and authorities cited.

It being clear that the particular regulation here enforced is not management and control of the respondent's railroad operations, but that it is lawful supervision and regulation, no testimony upon the subject is required.

This proceeding is to enforce as required by law an order of the Railroad Commissioners, who have full statutory powers of direct supervision and regulation of the initial discretion vested in the railroad company for the operation of the railroad; and it is not a case in which the court is asked to substitute its discretion for that of the respondent in the operation of trains.

The return is insufficient, and a peremptory writ of mandamus will issue when requested in due course.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.