No. 22,943.

GEORGE J. GIMPLE, *Appellee*, v. WALKER D. HINES, Director General of Railroads, operating the Union Pacific Railroad Company (JOHN BARTON PAYNE substituted), *Appellant*.

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Railroad Operated by Director-general of Railroads—Operated Under Provisions of Workmen's Compensation Act*. While the director-general of railroads was operating the Union Pacific Railroad shops in Kansas he was the employer of the workingmen in those shops, and he had power to determine for himself independently whether he would operate those shops under the workmen's compensation act or not; and since he did not elect to conduct the business of those shops outside its provisions his liability to his injured workmen is governed by the compensation act.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed December 11, 1920. Affirmed.

*R. W. Blair, T. M. Lillard, O. B. Eidson*, all of Topeka, and *A. L. Berger*, of Kansas City, Mo., for the appellant.

*J. O. Emerson, D. J. Smith*, and *F. E. Howe*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The sole question in this appeal is whether the election of the Union Pacific Railroad Company not to conduct its corporate business under the workmen's compensation act remained in effect after the Federal government took over the property of that company for war service under authority of congress, and operated it by the director-general of railroads.

The plaintiff lost an eye while employed as a workman in the Union Pacific shops at Kansas City, Kan., while the property was under Federal control and operation. He brought his action under the compensation law against Walker D. Hines, director-general of railroads, alleging that the defendant had never filed with the secretary of state his election not to come under the compensation act. The defendant answered that—

Gimple v. Railroad Co.

"The Union Pacific Railroad which he-is operating, as above stated, is owned by Union Pacific Railroad Company, a corporation duly organized and existing according to law, and that prior to the time its railroad was taken from it, by the United States Railroad Administration said Union Pacific Railroad Company had duly filed with the secretary of state of the state of Kansas its election not to come within the provisions of the Workmen's Compensation Law of the state of Kansas, and that said election has never been revoked by said Union Pacific Railroad Company, and that said railroad has been operated ever since said election was made either by Union Pacific Railroad Company itself or by this defendant or his predecessor as successor of Union Pacific Railroad Company under its aforesaid election, and that at no time has said railroad property been operated under the provisions of the Workmen's Compensation Law of Kansas."

Judgment was entered for plaintiff for $1,380 as compensation for the loss of his eye.

The defendant appeals, contending that the election of the railroad company not to operate its property under the act was sufficient to cover the situation while the property was operated by the defendant.

The statute in question provides that the act shall apply to employment in the course of the employer's trade or business in and about a railway (Laws 1917, ch. 226, § 1), and that "employment on railways" includes work in railway machine shops (Id., § 2), and that an "employer" includes—

"Any person or body of persons, corporate or unincorporate, and the legal representatives of a deceased employer or the receiver or trustee of a person, corporation, association or partnership; and when any mine, quarry, factory, or other place, covered by the provisions of this act in which work is being or to be performed is leased or let to any lessee or lessees under any form of contract or agreement other than on a royalty basis, then and in all such cases the lessee or lessees and the lessor or lessors shall be deemed to be operating said mine, quarry, factory or other place described above as employers jointly."

Section 23 reads:

"Every employer entitled to come within the provisions of this act, as defined and provided by this act, shall be presumed to have done so, . . . unless such employer shall file with the secretary of state at Topeka, Kansas, a written statement that he elects not to accept thereunder, and thereafter any such employer desiring to change his election shall only do so by filing a written declaration thereof with the secretary of state. Notice of such election shall be forthwith posted by such employer in conspicuous places in and about his place of business."

There can be no doubt that the director-general of railroads was the plaintiff's employer at the time of the injury. Under authority of congress the Union Pacific Railroad was "drafted" for war purposes. The president appointed a director-general and placed him in possession of the property, and the latter operated, managed and controlled the property during the war period. The director-general ordered that all suits based on causes of action arising from the operation of railroads during Federal control should be brought against himself as director-general and not against the owners of the railway property. During his stewardship the director-general had full, free and independent control of the Union Pacific Railroad. He changed, as seemed best to him, its policies, dealings and relations with the railroad company's patrons and with its employees. There can be no doubt the director-general had the power to say whether he would operate the Union Pacific Railroad property in Kansas under the provisions of the Kansas compensation act with its limited and modest but certain allowances of compensation to his injured workmen, or whether he would take his chances under the old law with its possibly larger judgment liabilities but also with its often-successfully-invoked defenses of contributory negligence and assumption of risk. We say the director-general had power to choose; moreover, he was bound to choose. He was bound to conform to the state law. That law placed him under the compensation act unless he chose to operate the railroad property outside its provisions.

Counsel direct our attention to the act of congress, 40 U. S. Stat. 451, and particularly to section 10), but we do not discern in it anything which subtracts from these views. Indeed, a careful reading of section 10 strengthens them. It provides that the carrier while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or Federal laws, and actions may be brought against such carriers as now provided by law. Except as inconsistent with the provisions and purposes of the act or with the orders of the president, there should be no change in state or Federal law. The state law, therefore, so far as practicable, was to remain the same. And the state law is that every employer of railroad workmen, and each succeed-

ing employer for himself independently (*Unrine v. Railroad Co.*, 104 Kan. 236, 178 Pac. 614), shall be deemed to be operating his business under the act unless he takes affirmative action as prescribed by the statute to relieve himself of its responsibilities. Such is our view. The question is novel, but it is merely the application of a Kansas statute; and we find nothing persuasive, helpful, scarcely analogous, in the cases to which our attention is called in the briefs of counsel.

The judgment is affirmed.