No. 24,163.

Mrs. F. A. McFarland, *Appellee*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

### SYLLABUS BY THE COURT.

Compensation Act—*Election by Railroad Not to Come Under the Compensation Act—Election Not Annulled by Government Control.* Where a railway company had elected not to come within the operation of the workmen's compensation law prior to the taking over of the railroad by the government during the war period, such election was not annulled by the taking of federal control, and when the possession of the railroad was restored to the company at the end of the war the relations between the state and the railway company remained the same as before the taking and another election was not necessary to take the company out of the operation of the workmen's compensation law.

Appeal from Reno district court; William G. Fairchild, judge. Opinion filed January 6, 1923. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*F. Dumont Smith* and *Eustace Smith,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The question involved in this case is whether the plaintiff may recover for the death of her husband, an employee of the railway company, who was struck and killed by a train of the defendant without fault or negligence on the part of the defendant. The recovery sought was under the workmen's compensation law, and we have the question whether or not the defendant was within the provisions of that law, and liable to pay compensation under its terms at the time the accident occurred. Under the act the defendant is presumed to have accepted its provisions unless it filed a statement with the secretary of state declining to accept or be governed by the act. (Laws 1917, ch. 226, §§ 1, 23.) It appears that after the passage of the law, and on June 6, 1917, the defendant formally elected not to accept the provisions of the act, and this election was in effect when McFarland met his death, unless it was abrogated by the action of the government in taking over the possession and control of the railroad for war purposes. Federal control of the railroad was taken on December 26, 1917, and from that date it was controlled and operated by the director-general under the transportation act of congress until March 1, 1920. The railroad never changed the election it made in 1917, nor did it make another election after the federal control was surrendered. The trial court held that the intervention of the government rendered the election made by the company in 1917 ineffectual and that not having made another election not to come under the provisions of the compensation law it was within that law and liable to pay compensation to plaintiff in accordance with its terms.

Did the intervention of the government, when it took over the control and operation of the defendant's railroad, cancel and invalidate the election made by the defendant on June 6, 1917? While complete possession of the railroad was taken by the government, it was only a temporary taking under an emergency provision, the design being that federal control should only continue during the war period. Federal control was taken of the physical properties and of the managing officers and employees. These officers and employees became for the time being the officers and employees of the

government under the control of the director-general, and therefore it has been held that it was necessary for that officer to elect whether or not he would operate the railroad under the workmen's compensation law. (*Gimple v. Railroad Co.*, 108 Kan. 118, 193 Pac. 1072.) The defendant, however, did not lose its corporate existence by the compulsory appropriation of the use of its railroad and the taking over of its managing officers and employees. Its duties to the state and the obligations it had assumed were not canceled by the provisional control of the government. Its rights and privileges, as well as its duties and obligations, outside of the control and operation of the railroad remained the same as before. When the compensation law was enacted the defendant took advantage of the provision giving employers the option to elect whether they would operate under that act. Defendant elected not to accept its provisions and its status and rights under the election became fixed. This election was not made for a month or a year or for any limited time, it was for all time unless it chose to bring itself within the act by a new election to that end. It has not changed its election and has not voluntarily done anything to annul the election made. It did not dispose of its property or do any other disabling act. The government in the exercise of the war power took over the railroad and operated it under a right in the nature of eminent domain. (*North Carolina R. Co. v. Lee*, 43 Sup. Ct. Rep., 2.) The temporary suspension of operation did not change the corporate relation or duties of the company to the state outside of the control assumed and enforced by the government, and we do not think that it affected the relation fixed by its election. It was still required to make reports to public officers, hold stockholders' meetings, elect officers, perform its contracts, declare dividends, adjust financial obligations, and carry on as a corporation, except, as to those functions wrested from it by the government. It had established relations with the state, and one of them had been fixed by the election that it should not be within the operation of the workmen's compensation law. This we think was not annulled by the conscriptive federal control which, under some circumstances, might not have lasted more than thirty days. In the interim the company maintained its relations with the state, kept its machinery running, and stood ready to take up its tasks where it left off, not knowing the day or hour when its physical properties would be restored and it would be required to resume control and operation of its railroad. When it did so its

corporate status was the same as when the control was taken from it, and its duties, rights and relations with the state were the same.

We conclude that the relation fixed under the compensation law was unbroken by the enforced control of the government, and therefore the judgment of the district court must be reversed and the cause remanded with the direction to enter judgment for the defendant.