THE STATE OF FLORIDA *ex rel.* R. HUDSON BURR, A. S. WELLS, AND A. D. CAMPBELL, AS RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Relators,* v. SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, AND GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY, A CORPORATION, *Respondents.*

Division A.

Opinion Filed May 25, 1925.

1. In mandamus the motion for peremptory writ is equivalent to a demurrer and necessarily involves a determination of whether or not the return is sufficient and successfully resists the issuance of the writ.

2. The Transportation Act of 1920, naturally resolves itself into four divisions; they are definitions of terms, termination of Federal Control of railways, disputes between carriers and their employees and subordinate officials and amendments to the Interstate Commerce Act.

3. The Interstate Commerce Act was passed for the purpose of regulating commerce throughout the nation, and as amended by the Transportation Act of 1920, for purposes of interstate commerce placed the transportation system of the country completely under the supervisory control of the Interstate Commerce Commission.

4. Under the Transportation Act the dictum of the Commission is the last word in such matters as through route and rate regulation, just division of joint rates, car and terminal service in the interchange of interstate freight and passengers between railroads, construction of new and extension of old lines, purchasing of equipment, safety devices, issuance of securities, safety and adequate facilities and such others as tend to prompt and continuous service in interstate commerce.

5. The authority of the Commissioners does not extend to spur, industrial, team, switching or side tracks located wholly within one State or to street, suburban or interurban electric railways which are not operated as part of a general steam railroad system of transportation.

6. The Interstate Commerce Commission is vested with extraordinary power in the matter of regulating interstate commerce, but there is still left a clear field of operation for the States in the matter of requiring just and reasonable freight and passenger service for intrastate business so long as such requirements are not inconsistent with lawful orders of the Interstate Commerce Commission in the interest of interstate commerce.

7. The Federal Transportation Act should not be construed to prevent the State from exercising its police power to require adequate local facilities for intrastate passenger traffic, reasonably necessary for the protection of the health, comfort and convenience of the passengers.

8.  A careful examination of the Transportation Act of 1920 discloses no authority or duty vested in the Interstate Commerce Commission either expressly or by clear implication to require the erection or improvement of passenger stations.

9.  The Transportation Act shows that what is intended is to regulate intrastate and foreign commerce and to effect intrastate commerce only as that may be incidental to the effective regulation and protection of commerce of the other class. They contain many manifestations of a continuing purpose to refrain from any regulation of intrastate commerce, save such as is involved in the rightful exertion of the power of Congress over interstate and foreign commerce.

10.  By the Transportation Act, there is a vast power declared to exist in the Interstate Commerce Commission and there is also a power reserved to the States. The intent of Congress to supersede the exercise by the States of their police power will not be inferred unless the Act of Congress fairly interpreted is in actual conflict with the law of the State.

11.  By the law of this State all orders of the Railroad Commission are held to be *prima facie* reasonable and just unless the parties resisting them present evidence on which the court may adjudicate the legality of the order.

A case of original jurisdiction. Motion for peremptory writ of mandamus.

Motion denied.

*James E. Calkins,* for Relators;

*J. E. Hall, Cooper, Cooper & Osborne* and *W. J. Oven,* for Respondents.

TERRELL, J.—This is a proceeding by mandamus on the part of the Railroad Commissioners of Florida to require the Seaboard Air Line Railway and the Georgia Southern & Florida Railway to construct umbrella or canopy sheds along the tracks in connection with their joint terminal

station at Lake City for the protection, comfort and convenience of passengers.

The alternative writ was granted January 23, 1924. It was subsequently amended as to paragraphs 12 and 17 and both respondents entered their return to the amended writ. Demurrers to both original and amended answers to the alternative writs were entered on September 23, 1924. Relators moved for peremptory writ, so the cause comes on to be disposed of on this motion.

There being no replication to either return, the motion for peremptory writ is equivalent to a demurrer and necessarily involves a determination of whether or not the return is sufficient and successfully resists the issuance of the writ. State *ex rel.* Railroad Com'rs v. Atlantic Coast Line R. Co., 61 Fla. 799, 54 South. Rep. 900; State *ex rel.* Knott v. Haskell, 72 Fla. 244, 72 South. Rep. 651; 18 R. C. L. 351.

Respondents also contend that the order of the relator amending the alternative writ is prejudicial and erroneous. It is not made to appear that such contention is well grounded. Our system of practice is extremely liberal as to amendment of pleadings prior to issue made and in this case the amendment was for the sole purpose of reaching a common understanding between relator and respondent Georgia Southern & Florida Railway as to the exact or more specific location of the umbrella or canopy sheds to be erected along said respondent's road. Stated from another angle the effect of the amendment was a definite understanding between relators and said last named respondent as to what was meant by the terms "main line track" and "passing track" as used in the alternative writ and which of said tracks it was sought to erect the canopy sheds along. We are unable to see how such an understanding could prejudicially affect any right involved here.

We come now to the main question involved in this litigation, *viz:* Has the Railroad Commission of Florida power

to make the order complained of and to what extent has such power been modified or abridged by the Transportation Act of 1920?

That part of the alternative writ containing the order complained of is as follows:

"17.   Now, therefore, we being willing that full and speedy justice be done in the premises, do command you, Seaboard Air Line Railway Company, a corporation, and Georgia Southern & Florida Railway Company, a corporation, respondents, forthwith:

" (a)   To erect and maintain at Lake City, Florida, in connection with the south side of your joint passenger terminal or union depot, a suitable umbrella or canopy shed, with hard-surfaced platform, for the purpose of protecting from rain passengers entraining from and detraining on the south side of said depot; such sheds to commence at a point five feet east of that certain switch-stand located just west of said depot on the main line track of the Seaboard Air Line Railway and to extend between said depot and main line track three hundred and fifty feet east, paralleling such main line track, and connected with said depot so as to protect from rain passengers passing from said depot to entrain and passengers passing from trains into said depot. " (b)  To erect and maintain at said city, in connection with the north side of said joint passenger terminal or union depot, a suitable umbrella or canopy shed, with hard-surfaced platform, for the purpose of protecting from rain passengers entraining from and detraining on the north side of said depot; such shed to be south of and adjacent to the track of the Georgia Southern & Florida Railway Company located nearest to said union depot on the north and commonly called 'passing track,' and to parallel said track for a distance of one hundred feet, and to be conveniently located and connected up with the north entrance of said

depot by an addtiional umbrella or canopy extension so as to protect from rain passengers passing from said depot to entrain and passengers passing into said depot from trains of the Georgia Southern & Florida Railway Company.''

In so far as the law of this State is controlling, the power of the Railroad Commissioners to make the above order is defined in paragraphs 5 and 12 of Chapter 4618, Revised General Statutes of Florida, 1920, as amended by Chapter 8469, Acts of 1921, as follows:

''5. To require the establishment of stations, including flag stations, at which trains may be required to stop, and the establishment of landings and wharves at which water carriers may be required to stop; to designate the location and require the erection of such freight and passenger depots, houses, platforms and wharves with all necessary conveniences as the safety, convenience and comfort of passengers and the proper handling, care, protection and prompt delivery and transportation of freight may require.

''12. To regulate all other matters pertaining to the receiving, handling, care, transportation and delivery of property, and to the safety, care, comfort, convenience, proper accommodation and transportation of passengers that shall be for the good of the public.''

We think it is well settled that the statutes here quoted vest power in the relators to make the order complained of. Louisville & Nashville Railroad Company v. Railroad Commissioners, 63 Fla. 491, 58 South. Rep. 543; State ex rel. Railroad Commissioners v. Louisville & Nashville Railroad Company, 62 Fla. 315, 57 South. Rep. 175; State ex rel. Railroad Commissioners v. Louisville & Nashville Railroad Company, 63 Fla. 274, 57 South. Rep. 673.

To what extent then did the Transportation Act of 1920 modify the power so vested in the Railroad Commission of Florida?·

The Transportation Act of 1920 naturally resolves itself into four divisions; they are definitions of terms, termination of Federal Control of railways, disputes between carriers and their employes and subordinate officials and amendments to the Interstate Commerce Act. The last named is the division with which we are especially concerned in this decision.

The Interstate Commerce Act was passed for the purpose of regulating commerce throughout the nation, and as amended by the Transportation Act of 1920, for purposes of interstate commerce placed the transportation system of the country completely under the supervisory control of the Interstate Commerce Commission. Under this Act the dictum of the commission is the last word in such matters as through route and rate regulation, just division of joint rates, car and terminal service in the interchange of interstate freight and passengers between railroads, construction of new and extension of old lines, purchasing of equipment, safety devices, issuance of securities, safety and adequate facilities and such others as tend to prompt and continuous service in interstate commerce.

The authority of the commissioners does not extend to spur, industrial, team, switching or side tracks located wholly within one state or to street, suburban or interurban electric railways which are not operated as part of a general steam railroad system of transportation. The authorities seem divided on the question as to what extent a State may regulate intrastate rates for exclusively internal traffic. By this Act suffice it to say that along with the foregoing powers and restrictions paragraph 17 of Section 1 contains the following proviso:

" 'Provided, however, that nothing in this Act shall impair or effect the right of a State in the exercise of its police powers to require just and reasonable freight and

passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this Act.' "

As to requiring *just and reasonable freight and passenger* service for intrastate business, we think this proviso qualifies the whole Act so long as such requirements are not inconsistent with any lawful order of the Interstate Commerce Commission made in the interest of interstate commerce.  We think further that this proviso establishes a clear boundary between the field of operation of the relators and that of the Interstate Commerce Commission in so far as that field applies to interstate and intrastate freight and passenger service.  An analysis of the Act supports this view and a study of the debates in the course of its passage seems to me to bar any contrary conclusions.

While the bill that is now the Transportation Act of 1920 was pending in Congress, Congressman McClintock of Oklahoma offered the following amendment (Congressional Record November 15, 1919, p. 9067) :

"Provided, further, that the Commission is hereby given authority to require a carrier to maintain his present arrangement or to make new arrangements, relative to the joint use of depots, upon such terms as shall be found by the Commission to be just and reasonable.  No carrier shall be allowed to discontinue the use of a depot in connection with another carrier until proper application has been made to the Commission."

Chairman Esch, one of the authors of the bill, in speaking to the amendment, used these words:

"The matter which the gentleman from Oklahoma seeks to reach by his amendment lies almost wholly within the police power of the several States.  There have been amendments offered to this bill seeking to preserve such police

powers. The committee in framing the bill has sought not to encroach upon such powers. The matters of depots and joint use of depots is practically in the jurisdiction of the State Commissions, and all but one of the States have such commissions. In such small matters the detail should be left within the jurisdiction of the State authorities, who know the situation, know the conditions, and know how best to meet the needs. There is, however, a provision in this bill providing for the joint use of terminals.''

These remarks of Congressman Esch on the McClintock amendment seem to characterize the prevailing sentiment of Congress running through the entire debate in so far as it touches the question of the police power of the States and I think settles conclusively that while the Interstate Commerce Commission was vested with extraordinary power in the matter of regulating interstate commerce there was still left a clear field of operation for the States in the matter of requiring just and reasonable freight and passenger service for intrastate business so long as such requirements were not inconsistent with lawful orders of the Interstate Commerce Commission in the interest of interstate commerce. Chicago, R. I. & P. Ry. Co. v. State, 90 Okla. 173, 217 Pac. Rep. 147; North Carolina Corp. Comm. v. Southern Ry. Co., 185 N. C. 435, 117 S. E. Rep. 563; Shealy v. Southern Ry. Co., — S. C. —, 120 S. E. Rep. 561; Railroad Comm. of California v. Southern Pac. Co., 264 U. S. 331, 44 Sup. Ct. Rep. 376.

The propriety of referring to statements made by a committee member in charge of a bill is well recognized. See Church of the Holy Trinity v. United States, 143 U. S. 457, 12 Sup. Ct. Rep. 511, 36 L. Ed. 226; United States v. St. Paul, etc. Railway, 247 U. S. 310, 38 Sup. Ct. Rep. 525, 62 L. Ed. 1130; Duplex Printing Co. v. Derring, 254 U. S. 443, 41 Sup. Ct. Rep. 172, 65 L. Ed. 349, 16 A. L. R. 196; also, the Wisconsin Passenger Fare Case.

The provision·to paragraph 17, Section 1, of the Transportation Act, said the Supreme Court of Oklahoma in Chicago, R. I. & P. Ry. Co., v. State, *supra*, "is plain and unambiguous, and, whether construed as an independent enactment or as a limitation restraining and limiting the sections preceding it, reserves to the State the right to exercise its police powers to require adequate passenger depots for intrastate passenger service."

The decision in the consolidated cases of State of Texas v. Eastern Texas R. Co. *et al.*, 258 U. S. 204, 42 Sup. Ct. Rep. 281, also support the view here expressed to the effect that the Transportation Act of 1920 did not deprive the State of its police power and authority to regulate intrastate freight and passenger service.

In Shealy v. Southern Ry. Co., *supra*, the Supreme Court of South Carolina registered the following pertinent comment with reference to the purpose of the proviso to paragraph 17, Section 1, under consideration:

"This provision is intended to guard the reserved rights of the states over intrastate commerce, and is no more embarrassing to the national administration of interstate commerce than the admitted rights of the states to prescribe intrastate rates, which do not discriminate against, nor burden, interstate commerce.

"The Federal Transportation Act should not be construed to prevent the state from exercising its police power to require adequate local facilities for intrastate passenger traffic, reasonably necessary for the protection of the health of the passengers (N. Y. etc. R. R. Co. v. N. Y., 165 U. S. 328, 17 Sup. Ct. Rep. 418, 41 L. Ed. 853; Barrett v. N. Y., 232 U. S. 14, 34 Sup. Ct. Rep. 203, 58 L. Ed. 483)."

A careful examination of the Transportation Act of 1920 discloses no authority or duty vested in the Interstate Commerce Commission either expressly or by clear implication

VOL. 89, JANUARY TERM, 1925.     429

State ex rel. R. R. Commissioners v. S. A. L. Ry. Co.—Opinion of Court.

to require the erection or improvement of passenger sta-
tions, nor is such authority claimed to be reposed in it by
the respondents. In view of such absence of authority and
the language of the proviso already discussed, the right of
the State to act in the premises is clearly reserved.

Commenting on the effect of the Interstate Commerce
Act as amended by the Transportation Act in Texas v.
Eastern Texas R. Co., *supra,* the Supreme Court of the
United States delivered the following illuminating conclu-
sion which supports the view here expressed:

"As a whole these acts show that what is intended is to
regulate interstate and foreign commerce and to affect in-
trastate commerce only as that may be incidental to the
effective regulation and protection of commerce of the
other class. They contain many manifestations of a con-
tinuing purpose to refrain from any regulation of intra-
state commerce, save such as is involved in the rightful
exertion of the power of Congress over interstate and for-
eign commerce. Minnesota Rate Case, 230 U. S. 352, 418;
Railroad Commission of Wisconsin v. Chicago, Burlington
& Quincy R. R. Co., 237 U. S. 563. And had there been a
purpose here to depart from the accustomed path and to
deal with intrastate commerce as such independently of
any effect on interstate and foreign commerce, it is but
reasonable to believe that that purpose would have been
very plainly declared. This was not done." Texas v. East-
ern Texas R. Co., 258 U. S. 204, text 217, 218, 42 Sup. Ct.
Rep. 281; Erie R. Co. v. Board of Public Utility Com'rs.,
254 U. S. 394, 41 Sup. Ct. Rep. 169.

The supporting view is also expressed in Fuller on Inter-
state Commerce, 100, 101, as follows:

"The Act to regulate commerce extends to and covers all
terminal facilities which, though entirely within a state,
are used wholly or partly in the operations of interstate

commerce. The Supreme Court has held that Congress has not so taken over the whole question of terminals, switching tracks, sidings, etc., of interstate railroads as to invalidate all state regulations relative to the interchange of traffic.''

A splendid discussion of the scope and effect of the police power of the State is contained in 5 R. C. L. 702 *st seq.* and 6 R. C. L. 182 *et seq.*, where among other things it is held that the exercise of the state's police power must yield when it comes in conflict with an affirmative exercise by Congress of its power to regulate commerce, but in the application of this principle of supremacy of an Act of Congress in a case where the State law is but an exercise of this reserved power, the repugnance or conflict should be direct and positive so that the two Acts cannot be reconciled or consistently stand together. By the Transportation Act, there is a vast power declared to exist in the Interstate Commerce Commission and there is also a power reserved to the States. The intent of Congress to supersede the exercise by the States of their police power will not be inferred unless the Act of Congress fairly interpreted is in actual conflict with the law of the State. Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. Rep. 715; Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. Rep. 501. By the facts presented in the case at bar these powers are consistent and easily reconciled and the field ample for the operation of both.

Respondents resist compliance with the order of relators on the ground that it does not recite that the umbrella or canopy sheds are necessary for the safety of passengers, that the cost involved cannot be charged to capital account; that such cost will amount to $12,900.00, $9,300.00 of which will represent the proportion of the Seaboard Air Line Railway Company and $3,600.00 the proportion of the Georgia Southern & Florida Railway Company; that such

sheds will not protect passengers from rain and cannot be made to do so within the scope of any reasonable expenditure; that the gross receipts of respondents from passenger traffic at Lake City have constantly decreased since 1915; that the populatiton of Lake City continually decreased within the same period; that since the opening of the concrete highway from Lake City to Jacksonville in June, 1923, bus lines have been established which are now and will continue to carry a large portion of the traffic; that the construction of such sheds at Lake City would be an unjust discrimination against other cities similarly situated and to undertake to construct sheds at all of them would amount to an expenditure of not less than $274,000.00; that in their Pullman, passenger depot, lunch room and other facilities already provided at Lake City, respondents have complied with every legal duty imposed on them in the premises under the law of this State; that no such requirements are being imposed as to street railways in this State; that the expenditure necessary to comply with the order of the relators is unreasonable and that the power vested in relators by State law to make and enforce the commands of the order have been superseded and are now vested in the Interstate Commerce Commission by the Transportation Act of 1920.

Inspection of the order discloses that it was for the sole purpose of requiring the construction of umbrella or canopy sheds in connection with the depot of respondents at Lake City for the protection, comfort and convenience of passengers the costs of which would not exceed $12,900.00. It did not require the extension, abandonment, removal or consolidation or any lines or tracks nor the issuance of any securities to cover the cost of the improvements. It is not made to appear that the expense incurred under the order would unlawfully burden or regulate in-

terstate commerce, or would in any wise impair the ability of respondents to perform their duty to the public. It is not charged that the order is inconsistent with any order or regulation of the Interstate Commerce Commission and from the law applicable to the facts as here outlined the conclusion is inescapable that the order complained of can be interpreted as nothing more than an ordinary exercise of the police power of the State for the convenience of passenger traffic at Lake City and is not therefore covered by the Transportation Act of 1920. Railroad Comm. of California v. Southern Pac. Co., 264 U. S. 331, 44 Sup. Ct. Rep. 376.

All other matters of defense were disposed of by relators contrary to the contention of respondents and by the law of this State are held to be *prima facie* reasonable and just unless respondents present evidence on which the court may adjudicate the legality of the order. State *ex rel.* Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 57 Fla. 522, 49 South. Rep. 43; College Arms Hotel Co. v. Atlantic Coast Line R. Co., 61 Fla. 550, 54 South. Rep. 459; State *ex rel.* Railroad Com'rs. v. Southern Tel. & Const. Co., 65 Fla. 270, 61 South. Rep. 506; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 67 Fla. 83, 64 South. Rep. 443; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 72 Fla. 379, 73 South. Rep. 171; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 69 Fla. 473, 68 South. Rep. 727.

Consideration of the motion for peremptory writ presents a more serious difficulty, the only response to such writ being that of performance. Examinatiton of the alternative writ discloses that both respondents jointly are commanded to erect and maintain in connection with the south side of their joint passenger terminal station at Lake

City 350 feet of umbrella or canopy shed with hard sur-faced platform and in connection with the north side of said joint passenger terminal station 100 feet of umbrella or canopy shed with hard surfaced platform. We think the duty is on each respondent separately to erect and main-tain the shed and platform along its particular road and that there can be no joint duty in such performance.

The motion for peremptory writ is therefore denied with leave to amend the alternative writ to conform to the views expressed in this opinion.

WEST, C. J., AND WHITFIELD, ELLIS, BROWNE AND STRUM, J. J., concur.

WHITFIELD, J., concurring.

The Federal Transportation Act, paragraph 17, Section 402, provides: "That nothing in this Act shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passen-ger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this Act." Rail-road Commission of the State of California v. Southern Pac. Co., 264 U. S. 331, 44 Sup. Ct. Rep. 376.

The Supreme Court of the United States has held that under the Interstate Commerce Act and the Amended Transportation Act of Congress, where the establishment of a railroad union terminal station involves a substantial change in destination, or a real addition to or abandonment of the main tracks and terminals of interstate railroad car-riers with important changes in the handling of interstate traffic and passengers, all at great expense requiring sub-stantial capital outlays, the matter is within the jurisdic-tion of the Interstate Commerce Commission to the exclu-

sion of State authority; and that in the absence of lawful orders of the Interstate Commerce Commission in the premises, State Commissions may have jurisdiction to direct the construction of merely local union stations or terminals not requiring the abandonment of main tracks and terminals and substantial changes in destination of interstate carriers' facilities or extensions of main tracks and not necessarily requiring substantial capital outlay. Railroad Commission of the State of California v. Southern Pac. Co., *supra*.

"The State, in the exercise of its police power, directly or through an authorized commission, may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. But its power to regulate is not unlimited. It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business. Mississippi R. R. Commission v. Mobile & O. R. Co., 244 U. S. 388, 390, 391, 37 Sup. Ct. Rep. 602. The validity of regulatory measures may be challenged on the ground that they transgress the Constitution; and thereupon it becomes the duty of the court, in the light of the facts in the case, to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void. Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 287, 297, 301, 21 Sup. Ct. Rep. 115; Burns Baking Co. v. Bryan, 264 U. S. 504, 44 Sup. Ct. Rep. 412. Railroad carriers may be compelled by State legislation to establish stations at proper places for the convenience of their patrons. Minneapolis & St. L. R. Co. v. Minnesota *ex rel.* Railroad & Warehouse Commission, 193 U. S. 53, 63, 24 Sup. Ct. Rep. 396. Any measure promulgated by the State to require a railroad company to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers does not create a new duty or impose any

VOL. 89, JANUARY TERM, 1925.          435

State ex rel. R. R. Commissioners v. S. A. L. Ry. Co.—Concurring Opinion.

unnecessary burden." Norfolk & W. R. Co. v. Public Service Commission of West Virginia, 265 U. S. 70, text 74, 44 Sup. Ct. Rep. 439.

The alternative writ alleges that the two railroad companies "are operating a joint passenger terminal or union depot at Lake City, Florida, and operate daily passenger trains, over different lines of railroad," to and from "said joint passenger terminal or union depot" from and to other points in the State of Florida, one company "using the platform facilities on the south side of said depot" and the other company "using the platform facilities on the north side of said station."

The order sought to be enforced states that the railroad commissioners "do find from the evidence adduced before them," that the passengers of one of the companies "entrain and detrain from the south side of said depot" and that the passengers of the other company "entrain and detrain from the north side of said depot," "that the union depot facilities afford no protection from rains of passengers getting on or off trains at said union depot ,and that the comfort and convenience of passengers require the construction and maintenance, in connection with said depot, of suitable umbrella or canopy sheds to protect entraining and detraining passengers from rain at said point." This finding shows a duty to furnish a facility for passenger transportation that is local in its nature and reasonable in its import.

The Federal authority has not been extended to the regulation of railroad companies in the mere erection of sheds for the safety, comfort and convenience of passengers entraining and detraining on their several lines at joint depots, at least where such regulations do not involve an interference with or a burden upon interstate commerce. The order here sought to be enforced does not appear to conflict with Federal authority or to be arbitrary or unrea-

sonable. The enforcement of such an order will not burden or interfere with interstate commerce. It will serve a useful purpose. The State Railroad Commission has the authority to make a legal and appropriate order in the premises. Louisville & N. R. Co. v. Railroad Com'rs., 63 Fla. 491, 58 South. Rep. 543; Chap. 8469, Acts 1921; State ex rel. v. Atlantic Coast Line R. Co. et. al., 77 Fla. 366, 81 South. Rep. 498.

The command of the order is that the two companies "be and they are hereby ordered and directed to erect and maintain in connection with the south side of said union depot, a suitable umbrella or canopy shed"  *  "on the main line track of the S. railway between said depot and main line track three hundred and fifty feet east paralleling such main line track, and connected with said depot so as to protect from rain passengers passing from said depot to entrain and passengers passing from trains into said depot," and "to erect and maintain at said city, in connection with the north side of said joint passenger terminal or union depot, a suitable umbrella or canopy shed,  *  for the purpose of protecting from rain passengers entraining from and detraining on the north side of said depot; such shed to be south of and adjacent to the track G Railway Company located nearest to said union depot on the north and commonly called 'passing track,' and to parallel said track for a distance of one hundred feet, and to be conveniently located and connected up with the north entrance of said depot by an additional umbrella or canopy extension so as to protect from rain passengers passing from said depot from trains of the G. Railway Company."

It is apparent that the "joint passenger terminal or union depot" referred to in the alternative writ is a building erected between the line tracks of the two railroad companies as such tracks intersect at Lake City, Florida, in which building there is doubtless appropriate waiting

rooms, ticket offices, toilets, seats, &c., used by passengers of both railway companies. It is also apparent that the sheds ordered to be erected are not to be a part of, but to be an adjunct to and used "in connection with" the building used as "a joint passenger terminal or union depot," the sheds to be erected to the north and to the south of the depot building and along side of the railroad tracks of each company, one 350 feet and the other 100 feet in length. Such sheds would not be physically a part of the "depot" building that is located between the tracks of the two lines of railway, and that presumably by agreement stands partly on the right of way of each railway company; but such sheds would apparently be upon the separate right of way of each company. It does not appear that each company has a right or a duty to erect a shed along the line track of the other company, or that one company owes a duty to passengers entraining or detraining on the line of the other company. If no such right or duty exists by law or by agreement it cannot be conferred or enforced by the order made without conceivably violating the property rights of the respondents. On the showing made the *joint* rights and duties of the respondents have relation to the "depot" that is jointly used by them. The rights and duties of each company as to passengers entraining and detraining on the respective and wholly separate lines on different sides of the "depot" are apparently several, not joint, except as to the use of the building and its immediate facilities that are jointly used as a "terminal or union depot" by both companies. If the S. Company has no right or duty to erect a shed along the line track of the G. Company, it would be a trespasser to do so, and *vice versa*. The order commands the companies jointly to erect the two sheds. Obedience might render each company a trespasser and a violator of the law. It might also in effect take the property of one for the use of the other in violation of organic rights.

The order does not require the two railroad companies to enlarge or improve their ''joint passenger terminal or union depot,'' but it requires the two companies to jointly erect sheds along the line tracks of each company, which sheds, though connected with the passenger depot, are apparently not for joint use, but for the use of the passengers of each railroad severally.

While passengers may use both sheds in passing from one railroad line to the other, still the sheds are not a part of the jointly used depot, but each shed is that of the particular company alone; and after leaving the joint depot and its immediate accessories, the passengers are served by each road severally and not jointly in the sheds and facilities required for safe, comfortable and convenient entraining and detraining on each line severally.

Even if the railroad commissioners had power to order the two companies to jointly erect the same length of shed on each line, the order here is to erect a shed extending 350 feet along the line track of the S. Company and only 100 feet along the line track of the G. Company.

When a writ of mandamus is applicable it should be framed to meet the exigencies of the case. When a relator is entitled to a writ of mandamus, he should have an effective writ. See State ex rel. Knott v. Haskell, 72 Fla. 176, text 206, 72 South. Rep. 651. See also State ex rel. Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, text 369, 57 South. Rep. 175.

The statute provides that ''If in any proceeding to enforce any rule, regulation, schedule or order, any part thereof shall be found invalid, the court shall proceed to enforce such portion thereof as may be valid if the same ·can be done.'' Sec. 4618, par. 13, Rev. Gen. Stats. 1920.

The relators would be entitled to a judicial enforcement of a legal order requiring adequate sheds to be constructed

along the respondents' railroad tracks for the comfort and convienience of passengers entraining and detraining at the union depot at Lake City; but on the showing made, apparently the order should be framed with an appropriate command to each of the respondents severally to construct a shed along its line track.