ILLINOIS CENTRAL RAILROAD CO. *v.* PUBLIC SERVICE
COMISSION OF INDIANA ET AL.

[No. 28,288.   Filed December 9, 1947.   Rehearing Denied
February 25, 1948.]

*Will H. Hays, Hays & Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor, J. Olias Vanier, John T. Hays* and *Will H. Hays, Jr.*, all of Sullivan, *John O. Moomaw*, of Bloomfield; *C. A. Helsell* and *Joseph H. Wright*, both of Chicago, of counsel, for appellant.

*Cleon H. Foust*, Attorney General, *Frank E. Coughlin*, First Deputy Attorney General and *Karl J. Stipher*, Deputy Attorney General, for appellees.

O'MALLEY, J.—The appellant appealed to the Greene Circuit Court from an order of the Public Service Commision of Indiana, wherein it was ordered to restore and resume the operation of two passenger trains on the line of its railroad. This action was by complaint as provided under § 55-112, Burns' 1933.

The issues were formed by the complaint, answer in two paragraphs, a reply, a cross complaint by the commission and answer thereto.

The evidence offered consisted of that given before the commission at the hearing on the "show cause" order and a complete transcript of the former hearing on petition of the appellant to discontinue the operation

of the two trains which were the subject of the present matter.

There are two questions of import. One concerns the right and authority of the commission to adopt rules of procedure and particularly the following rules adopted in 1937, to-wit:

"RULE NO. 1R  Before any railroad company engaged in intrastate commerce in the State of Indiana shall discontinue any passenger train or trains rendering intrastate service, such railroad company shall file its petition with this Commission, requesting authority so to do. In such petition such company shall set out in detail the number and schedule of such train or trains; the name of the cities and towns served in the State of Indiana; whether such trains transport mail, express, baggage and freight in addition to passengers; total amount of revenue received from the operation of such trains operating within the State of Indiana, and the cost of such train operation for the previous calendar year; and such other facts as may be necessary to fully advise the Commission as to such passenger train service.

"RULE NO. 2R  The Commission shall docket said petition and set the same for public hearing and give at least ten days notice thereof by publication."

The commission derives its authority from the Legislature. Under the statutes, §§ 54-101, 54-107, Burns', 1933, § 54-119, Burns' 1933 (Supp.), the Public Service Commission of Indiana was granted the powers and duties of the original Public Service Commission of Indiana organized in 1913 and in addition thereto the powers and duties of the Railroad Commission of Indiana were continued and bestowed upon the present Public Service Commission of Indiana.

Under § 55-101, Burns' 1933, the Railroad Commission of Indiana was given the power "to adopt all necessary rules and regulations to govern . . . . train serv-

ice and accommodations . . . ." Considerable rule making authority was granted under subsection (e) of this section under the heading, Procedural Rules and Regulations, which is as follows:

"(e) The commission may adopt and enforce such rules, regulations and modes of procedure as it may deem proper to hear and determine complaints and for the conduct of all investigations held by it or its appointees and to regulate the conduct of its inspectors and appointees."

Under the above sections, it would seem that the Public Service Commission of Indiana had ample authority to promulgate the rules of orderly procedure to which reference is made in this case. In *Chicago, M., St. P. & Pac. R. Co.* v. *Pub. Serv. Comm.* (1943), 221 Ind. 1, 46 N. E. (2d) 230, this court recognized such authority in affirming the refusal of the commission to authorize the discontinuance of a train.

In another jurisdiction it has been held that a rule, requiring the carrier to apply for permission to remove a train from service, is necessary in order to make effective and complete the lawful supervision and regulation of railroad companies in the operation of passenger trains. *State ex rel. R. R. Com'rs.* v. *A. C. L. R. R. Co.* (1911), 60 Fla. 465, 54 So. 394, 61 Fla. 799, 54 So. 900.

In the case of *State ex rel. Spillman* v. *Chicago & N. W. R. Co.* (1924), 112 Neb. 176, 198 N. W. 670, it was held that the Public Service Commission of Nebraska had authority under the law to make general orders or rules for the reasonable conduct of their business in regulating and controlling the service of a railroad. The statute under which the commission of that state acted is no broader than the one under which

the commission of this state acted in the instant case. In order that those interested may be able to judge the extent of the power granted by the Legislature of that state, we are here setting out § 75-201, Revised Statutes of Nebraska 1943, which is as follows:

"The State Railway Commission shall have the power to regulate the rates and services of, and to exercise a general control over, all railroads, express companies, car companies, sleeping car companies, freight and freight-line companies, and all other common carriers engaged in the transportation of freight or passengers within this state."

The rules under which the commission acted in the instant case seem to us to be within the purview of power granted by § 55-101, Burns' 1933, and subsection (e) thereof. That power and authority seems to have never before been questioned. This appellant has heretofore on at least two occasions filed petitions requesting authority to take trains out of service. If the commission lacked authority to make such rules under the law, there would be a condition existing that might become intolerable. The maintenance of service to the public depends upon the right and power of the commission to hear and determine applications for the discontinuance of service. The commission would have difficulty in controlling or regulating that particular part of the railroad business in any manner if such power were lacking.

The other question which seems to be of controlling importance in this matter concerns the force and effect of the order issued by the Office of Defense Transportation as General Order O. D. T. 47. That order was general in its nature and each railroad reported whether or not certain of its trains came within its terms. The appellant discontinued the two trains which are in-

volved in this cause by the authority of that order. It now contends that upon the recission of that order it was not necessary for the appellant to reactivate the two trains here under scrutiny and on that they must either stand or fall. The order prohibited the operation of a passenger train schedule on which there had not been a use to the extent of 35% of capacity for the month of November, 1944. It became effective March 1, 1945, and by its own terms it was to be effective "until the termination of the present war shall have been duly proclaimed, or until such earlier time as the Office of Defense Transportation by further order may designate." As we understand that order it was to be a stay for and during the war, or until earlier terminated by order of the Office of Defense Transportation. The order did not enlarge the authority of the national government over matters wholly within the State of Indiana, nor shrink or wipe out the authority of the state over matters within its borders. It was, and it was claimed to be, an effort to pool transportation resources for the war effort. In conformity with the plain wording of the order, its need evidently having become unnecessary in the opinion of the officials in charge of that matter, there was a recision thereof on August 21, 1945.

In *McFarland* v. *Railway Co.* (1923), 112 Kan. 620, 621, 622, 211 P. 635, 636, the court considered whether or not a railway corporation which, prior to the first world war, had elected not to come under the terms of the workmen's compensation law of Kansas, and which was taken over by the federal government during the war, would be required to make a new election when the road was returned to its owners. In considering such matter the Supreme Court of Kansas said:

"While complete possession of the railroad was taken by the government, it was only a temporary taking under an emergency provision, the design being that federal control should only continue during the war period . . . . The defendant, however, did not lose its corporate existence by the compulsory appropriation of the use of its railroad and the taking over of its managing officers and employees. Its duties to the state and the obligations it had assumed were not canceled by the provisional control of the government. Its rights and privileges, as well as its duties and obligations, outside of the control and operation of the railroad remained the same as before . . . . The temporary suspension of operation did not change the corporate relation of duties of the company to the state outside of the control assumed and enforced by the government, and we do not think that it affected the relation fixed by its election."

See 51 C. J., § 90, p. 455.

While the railroad was first cited to appear and show cause why the trains numbered 333 and 334 had not been placed in service, there is no claim that by the order of the commission there was any change in the relative standing of either party. The commission may have been using this order to give to the railroad an opportunity to present any valid reason to sustain its position. During the continuance of General Order O.D.T. 47, such order and the matter relating thereto would have been a reason, valid in law, for failure to operate the two trains, but certainly an order of that kind would not open up the question of public convenience and necessity, since that would cause the retrial of the matter on which the "show cause" order was based.

The record discloses that on August 16, 1941, the appellant filed a petition with the Public Service Com-

mission of Indiana wherein it was requested that an order be made permitting the discontinuance of the two trains here involved. That petition was denied, and the appellant then sought review in the Marion Circuit Court by filing a complaint in said court on April 22, 1942. It is further shown by the record that after trial the court on March 5, 1943, found against the appellant and in favor of the commission and no appeal was taken from that judgment. It plainly appears that trains numbered 333 and 334 were kept in service until the effective date of General Order O.D.T. 47 which was issued in 1945 by the federal agency and became effective on March 1, 1945. That order was rescinded on August 21, 1945, and the commission then issued the "show cause" order based upon the judgment of the Marion Circuit Court. Of itself, the order to "show cause" had a value to the commission, but it was not an effective way of forcing the two trains to be again placed in service.

When the appellant filed its complaint for review and to enjoin that "show cause" order, it was asking that an order of the commission which had neither force nor effect be enjoined. However, when the commission filed a cross complaint, based on both the ruling of the commission and the judgment of the Marion Circuit Court, there then was a request for mandate. In that proceeding there could be no question raised concerning the matters of convenience and necessity. All that was involved was whether or not the carrier should comply with the judgment of the Marion Circuit Court and place the trains in service.

Whether or not public convenience and necessity require that the two trains be placed in service must first

be presented to the commission in an orderly way and in conformity with its rules. Here, it is the carrier that has failed to comply with the order of the commission even when that order is carried into a judgment which is in full force and effect.

In the case of *Chicago, M., St. P. & Pac. R. Co.* v. *Pub. Serv. Comm., supra,* Judge Fansler in speaking for the court said [pages 4, 5 of 221 Ind., page 231 of 46 N. E. (2d)]:

"The fact, if it had been clearly shown, that the train was operated at a loss does not alone necessarily require the commission to consent to its discontinuance. In *N. Y. Central Railroad Co.* v. *Pub. Service Com. et al.* (1937), 212 Ind. 329, 336, 337, 7 N. E. (2d) 957, 960, we said regarding profitable or nonprofitable operation of a given service: 'This is only one element of the case. The railroad company possessed the power of eminent domain. It condemned property and brought its line across the country wherever and whenever it chose. Having been granted that authority by the Legislature, it owed to the public the reciprocal right of service. It was not only its privilege to make a profit from its operation, but it owed a duty of service to each community through which it passed. It is a matter of common knowledge that some communities are more profitable to the company than others, depending on population and business enterprises. Not all persons or corporations engaged in business in the commercial world, or operating a public utility, are able to realize a profit from each item of business. Merchants sometimes carry a line of goods, unprofitable as to that particular line, but necessary to accommodate customers. A railroad company operating through a community, enjoying the rights of eminent domain, should be more responsible to the community than a concern engaged in private commercial lines of business.' There was no effort to show that the appellants' operation in the community, or in the state, or in its whole system, was unprofitable so

that isolated operations at a loss might amount to confiscation.

"The Public Service Commission is vested with discretion in requiring service."

Under the evidence here, we are faced with the same situation as that outlined in the above case. While we do not weigh evidence on appeal, we do examine it to ascertain whether or not there is evidence to support the judgment of the lower court. In our opinion the evidence is ample to support the judgment entered in the Greene Circuit Court.

We are unable to find any reversible error and the judgment is therefore affirmed.

Emmert, C. J. and Young, J., not participating.

NOTE—Reported in 75 N. E. (2d) 900.