THE STATE OF FLORIDA, *ex rel.* FRED H. DAVIS, AS ATTORNEY GENERAL, AND *ex rel.* A. S. WELLS, E. S. MATTHEWS AND MAMIE G. EATON, AS RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Relators,* v. ATLANTIC COAST LINE RAILROAD COMPANY, *Respondent.*

En Banc.

Opinion Filed January 10, 1928.

*Fred H. Davis,* Attorney General, and *Theo T. Turnbull,* for Relators;

*W. E. Kay, Doggett & Doggett,* for Respondent.

TERRELL, J.—This is a proceeding by mandamus on relation of the Attorney General and the Railroad Commissioners of the State of Florida, seeking to require the respondent, Atlantic Coast Line Railroad Company, to restore its tracks along the line of its railroad extending from Yuste to Monticello in Jefferson County, Florida, a distance of from five to six miles, and to maintain the

same and to restore the schedule and train service over said line of railroad that was in effect prior to the 25th day of August, A. D. 1927. The material allegations of the alternative writ are as follows:

"That the respondent is a common carrier operating a branch line of railroad within the State of Florida known as the Yuste to Monticello branch, being part of a line of railroad formerly known as the Thomasville, Georgia-Monticello, Florida branch; that that portion of this line within the State of Florida was constructed and built under a charter granted by the State of Florida to the Savannah, Florida and Western Railway by Chapter 3794, Laws of Florida, 1897; that this franchise was purchased by the Atlantic Coast Line in 1902, and that the Atlantic Coast Line Railroad Company had operated said line up to and until the 25th day of August, 1927, since which date the respondent has failed to operate said line, and did without notice and without the consent of the Railroad Commission of Florida, abandon and cease operating its trains over that part of its Thomasville, Georgia-Monticello, Florida branch running from Yuste to Monticello; that it took up this line entirely, abolished depots or station agencies, and has since August 25th, 1927, deprived the Town of Monticello, Florida, of railroad facilities which it had had; that this action on the part of the Atlantic Coast Line Railroad Company has resulted in confusion, inconvenience, hindrance, delays and injury to the public generally in the State of Florida; that the people of the State of Florida are without remedy in the premises unless it be afforded by the interposition of this Court through a writ of mandamus. The alternative writ directs respondent to restore its tracks, the train service, schedules, etc., until permission shall have been lawfully obtained from the proper

authorities authorizing such discontinuance and abandonment, or to show cause why it refuses so to do.''

Respondent moved to quash the alternative writ. The motion to quash recites seventeen grounds all of which are predicated on: (1) misjoinder of parties relators; (2) relators have their remedy at law; (3) this Court is without jurisdiction of the cause and (4) the State of Florida and the Railroad Commission of Florida are without authority to regulate the subject matter involved.

It is first contended by respondent that the Railroad Commissioners of Florida are improper parties relators to this cause.

In the instant case mandamus is sought to require the performance of a public duty. The rule seems well settled that where mandamus is invoked for the enforcement of a purely private right the State is not a necessary party and all proceedings must be conducted in the name of the actual parties in interest. 18 R. C. L. 323, 14 Am. & Eng. Ency. of Law, 218, and cases cited. But where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, it being sufficient that he is interested as a citizen in having the law executed and the duty in question enforced. State v. Crawford, 28 Fla. 441, 10 So. 118, 14 L. R. A. 253; Florida Central Railroad Company v. State, 31 Fla. 482, 13 So. 103, 34 A. S. R. 30, 20 L. R. A. 419, 18 R. C. L. 325, and cases there cited. 14 Am. & Eng. Ency. of Law, 218. Cases in which questions of public right are primarily involved should as a rule be brought in the name of the people, the person instituting the proceeding appearing as relator. It is also fitting, but not essential, that such cases be inaugurated by the Attorney General, or with his consent or that the refusal of that officer to act be

shown. State ex rel. Attorney General v. Johnson, 30 Fla. 433, 11 So. 845, 18 L. R. A. 410; Northern Pacific Ry. Co. v. Washington Territory, 142 U. S. 492, 18 R. C. L. 324.

The authority of the Attorney General to institute this proceeding is not questioned. We think that in view of the rule here announced and in view of the power vested in the Railroad Commission by Section 4618, Revised General Statutes of Florida, as amended by Chapter 8469, Acts of 1921, to regulate schedules, freight and passenger service and other matters pertaining to common carriers it was proper for the Railroad Commissioners in the interest of or as representatives of the people to be made parties hereto.

In addition to the foregoing it is not out of place to state in this connection that paragraph 20 of Section 1 of the Interstate Commerce Act, as amended by the Transportation Act of 1920, is ample authority for making the Railroad Commissioners of Florida parties relators to this cause, the pertinent part of said paragraph 20 of Section 1 being as follows:

"Any construction, operation or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this Section may be enjoined by any Court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulatory body of the State or States affected, or any party in interest."

A careful study of the Interstate Commerce Act, as amended by the Transportation Act of 1920, discloses that this provision was put in that Act for the express purpose of authorizing the various Railroad Commissions, or such other regulatory bodies as the state might have, to become parties to suits to enjoin construction, operation or abandonment contrary to the provisions of the named paragraphs of said Act. We are cognizant of the fact that the

Act uses the word "enjoined" in referring to the relief granted, but we do not consider this use here limited to the technical meaning of that term.

It is next contended by respondent that relators have (1) an adequate remedy at law, (2) that this Court is without jurisdiction to make any order affecting the subject matter of the alternative writ, and (3) the State of Florida and the Railroad Commission of Florida are without authority to regulate the subject matter involved.

On account of the interblend of law and fact touching these three questions we will treat them together, the answer to one being the answer to all. It is strongly urged upon us by respondent that under the provisions of the Interstate Commerce Act the subject matter of litigation here brought in question is one of regulation that Congress has vested in the Interstate Commerce Commission, that State nor Federal Courts have any jurisdiction in the premises, and that relators should have gone to the Interstate Commerce Commission for relief. The point to these questions is dissolved by an interpretation of certain portions of paragraphs 17, 18, 19, 20 and 22 of Section 1 of the Interstate Commerce Act, as amended by the Transportation Act of 1920, said portions being as follows:

(17). * * * Provided, however, that nothing in this Act shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this Act.

(18). After ninety days after this paragraph takes effect no carrier by railroad subject to this Act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate

any line of railroad, or extension thereof, or shall engage in transportation under this Act over or by means of such additional or extended line of railroad, *unless and until there shall first have been obtained from the Commission* a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation of such additional or extended line of railroad, and no carrier by railroad subject to this Act *shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment.*

(19). The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the Commission may from time to time prescribe, and the provisions of this act shall apply to all such proceedings. Upon receipt of any application for such certificate the Commission shall cause notice thereof to be given to and a copy filed with the Governor of each state in which such additional or extended line of railroad is proposed to be constructed or operated, or all or any portion of a line of railroad, or the operation thereof, is proposed to be abandoned, with the right to be heard as hereinafter provided with respect to the hearing of complaints or the issuance of securities; and said notice shall also be published for three consecutive weeks in some newspaper of general circulation in each county in or through which said line of railroad is constructed or operates.

(20). The Commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to

the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require. *From and after issuance of such certificate and not before,* the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation, or abandonment covered thereby. *Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this Section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest.*

(22). The authority of the Commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation.''

The dominating purpose of the Interstate Commerce Act was to secure conformity to prescribed standards through examination and appreciation of the complex facts of transportation by the body created for that purpose; and as the Supreme Court of the United States has frequently said it would be destructive of the system of regulation defined by the Interstate Commerce Act if the Court without the preliminary action of the Interstate Commerce Commission were to undertake to pass upon the administrative questions which the Act has primarily confided to the Commission. Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 33 Sup. Ct. Rep. 729; Mitchell Coal & Coke

Co. v. Penna. Railway Co., 230 U. S. 247, 33 Sup. Ct. Rep. 916; Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U. S. 138, 34 Sup. Ct. Rep. 885. In all these cases and many others we have examined on this question the preservation of uniformity and the prevention of discrimination in rates in interstate commerce, as defined in the Interstate Commerce Act, was the controlling principle leading the Court to its conclusion.

In State *ex rel.* Burr v. Seaboard Air Line Ry. Co., 89 Fla. 419, 104 So. 602, this Court held that under the Interstate Commerce Act, as amended by the Transportation Act of 1920, the Interstate Commerce Commission was vested with extraordinary power in the matter of regulating interstate commerce, but that there was still left a a clear field of operation for the states in the matter of requiring just and reasonable freight and passenger service for intrastate business so long as such requirements are not inconsistent with lawful orders of the Interstate Commerce Commission in the interest of interstate commerce, and that said Act should not be construed so as to prevent the state from exercising its police power to require adequate local facilities for intrastate passenger traffic reasonably necessary for the protection of the health, comfort, and convenience of the passengers.

It has been held that wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule. Atchison, T. & S. F. Ry. Co. v. Railroad Commission, 190 Cal. 214, 211 Pac. Rep. 460.

These holdings by the Federal Supreme Court, the Supreme Court of Florida, and the Supreme Court of California are amply supported by the spirit and substance of that part of paragraph 17 and paragraph 22 of Section

1 of the Interstate Commerce Act as amended by the Transportation · Act of 1920, quoted in this opinion. Turning to the debate in Congress as presented in the Congressional Record incident to the passage of this Act, there can be no doubt that our National law-making body purposed therein to define a clear field of operation with extraordinary power imposed in the Interstate Commerce Commission to preserve uniformity and prevent discrimination in rates in interstate commerce, but along with this there is the equally evident purpose not to encroach on such matters as lie within the police power of the states to regulate; such as depots, joint use of terminals and reasonable freight and passenger service in intrastate commerce.

With these observations in mind let us examine the provisions of paragraphs 18, 19, and 20 of the Interstate Commerce Act here quoted which we think dissolve the point to the questions under discussion.

Paragraph 18 requires that before any railroad subject to that Act shall undertake any extension of its line, the construction of new lines, or shall. acquire or operate any line of road or extension thereof, or shall engage in transportation under said Act over or by means of such additional or extended line of road, *it shall first obtain from the Interstate Commerce Commission a certificate* that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and that no carrier by railroad subject to said Act *"shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment."*

Paragraph 19 provides that the application for an issuance of the certificate required by paragraph 18 shall be under rules and regulations prescribed by the Interstate Commerce Commission and that upon receipt of the application therefor, notice shall be given to the Governor of the State affected with the right to be heard as the Act provides and that said notice shall be published for three consecutive weeks in some newspaper of general circulation in each county, in or through which said line of railroad is constructed or operates.

Paragraph 20 provides that the Interstate Commerce Commission may issue the certificate as prayed for, or may deny it *in toto*, or may issue it with such restrictions or modifications as in the judgment of the Commission, public convenience and necessity may require. This paragraph further provides that *from and after the issuance of such certificate and not before* the carrier may without other approval proceed with the continuation, operation, or abandonment covered thereby and that *"any construction, operation or abandonment contrary to the provisions of this paragraph or of paragraph* (18) *or* (19) *of this Section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the state or states affected, or any party in interest."*

We think that in view of these provisions the conclusion is inescapable that the acquirement of a certificate of convenience and necessity is a prerequisite to the abandonment on the part of a railroad company of any portion of its line of railroad and that the said Act clearly imposes the burden on the carrier by railroad to secure such certificate. When secured it is a complete defense to an action of this kind but until secured abandonment may be enjoined as provided in paragraph 20.

If this was exclusively a matter of rate regulation, administration or discrimination among interstate carriers, the Interstate Commerce Commission would undoubtedly be the forum in which this proceeding should be conducted, but such is not the case. We have here in its final analysis the question of whether or not a common carrier by railroad which comes within the purview of the quoted Federal Statute, can in defiance of the terms of its franchise with the State and prior to being authorized by the Interstate Commerce Commission to do so, abandon a portion of its line of railroad lying wholly within one State and which it constructed and has operated and maintained for many years. We think this question must be answered in the negative and that until relator has by appropriate proceedings before the Interstate Commerce Commission secured its certificate of convenience and necessity to abandon that portion of its road extending from Yuste to Monticello in Jefferson County this Court has jurisdiction of the parties and the subject matter and may determine whether such facts have been presented as constitute a cause of action. If this is not the rule a carrier may *ad libitum* abandon any portion of its road and leave the state and the patrons served by it helpless, as there appears to be no power in the Interstate Commerce Commission to enforce the reinstatement of all or any portion of an abandoned road.

We have found no cases directly in point, but the following support this view: State ex rel. Burr v. Seaboard Air Line Ry. Co., 89 Fla. 419, 104 So. 602; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285, 42 Sup. Ct. Rep. 477, 66 Law Ed. 943; Texas & Pacific Ry. Co. v. Gulf, Colorado & Santa Fe Ry. Co., 270 U. S. 266, 46 Sup. Ct. Rep. 263, 70 Law Ed. 578; Western & Atlantic Ry. Co. v. Georgia Public Service Commission, 267 U. S. 493, 45 Sup. Ct. Rep. 409, 69 Law Ed. 753; Texas v. Eastern Texas Ry.

Co., 258 U. S. 204, 42 Sup Ct. Rep. 281, 66 Law Ed. 566; Atchison T. &. S. F. Ry. Co. v. Railroad Commissioners, et el., 190 Cal. 214, 211, 460.

It follows that the motion to quash the alternative writ must be and the same is hereby overruled, and the respondent allowed 30 days in which to plead further as it may be advised.

ELLIS, C. J., AND WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.

WHITFIELD, J., concurring:

This Court has jurisdiction to require a railroad company operating in this State to perform its public duties as a common carrier in accordance with its franchise obligations, when lawful authority of the Federal Congress in regulating interstate commerce is not interfered with. See State ex rel Ellis v. A. C. L. Railroad Company, 53 Fla 650, 689, 44 So. 213, 223, 13 L. R. A. (N. S.) 320, 12 Ann. Cas. 359. While a "lawful order" of the Interstate Commerce Commission permitting a railroad company to dismantle the track of a branch line of an interstate railroad and to discontinue a depot at the terminal of such branch line, might be a defense to an alternative writ of mandamus commanding the restoration of the dismantled track and the discontinued depot, the administrative authority of the Interstate Commerce Commission in the premises does not affect the jurisdiction of this Court to enforce the public duty unless valid competent authority to so discontinue the public service is adduced in defense; and the validity of an administrative certificate of authority may be litigated and adjudicated subject to review by the Federal Supreme Court to secure uniformity of interstate regulations and the supremacy of the Federal authority.

The Federal Transportation Act provides that ''no carrier by railroad subject to this Act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the (Interstate Commerce) Commission a certificate that the present or future public convenience and necessity permit of such abandonment.'' This provision confers administrative authority upon the Interstate Commerce Commission, to grant or refuse authority to abandon a part of an interstate railroad. It does not expressly include *restoration* of dismantled railroad tracks. The Act further provides that ''Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest.'' This provision relates to a permissible but not necessarily an exclusive preventive remedy for unlawful ''construction, operation or abandonment,'' and does not exclude appropriate remedies for *restoring* railroad tracks that have been unlawfully disjointed and rendered useless for public transportation purposes. For such an unlawful destruction of a railroad track, the remedies afforded by law are applicable, and this is expressly recognized by the provision in the Federal Transportation Act which reads: ''Provided, however, that nothing in this Act shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of the Act.''

The restoration of a dismantled track and of an abolished depot is not specifically provided for as an administrative

function. It therefore remains a subject of judicial power to be exercised consistently with the dominant Federal authority in the premises. Courts are not necessarily deprived of their *judicial powers* over a subject because an administrative determination in the premises is provided for by the statute. The courts may decline to apply mandamus or injunction when other adequate remedy is provided by law or until an authorized administrative determination in the premises is made. Uniformity of regulation of interstate railroad common carriers and the supremacy of the Federal authority within its sphere may be secured by appropriate judicial proceedings without preliminary administrative determinations, though the courts may defer judicial action pending authorized administrative determinations in matters where such a course will facilitate the administration of applicable law, particularly where exhaustive consideration of complicated facts and circumstances and statutory administrative discretion are involved. For example, cases involving rates of or unlawful discrimination by common carriers. Where, however, questions of law, and not voluminous facts or discretionary administrative functions are involved, the courts may act without administrative determinations. Ultimate review by the Federal Supreme Court secures uniformity of regulations and the supremacy of the authority of Congress.

Maintenance of the railroad track that has been dismantled and of the station agency that has been abolished, and of the service that has been rendered the public by the use of the track and station, constituted a part of the public service that was being performed by the respondent in Florida pursuant to franchises and privileges granted by the State; and the State has the right through its chief law officer and its railroad commissioners, who have offi-

cial functions with, reference to the public service, to require by appropriate' legal proceedings a restoration of the track and depot station and a continuance of the service heretofore' rendered, unless the respondent duly shows a legal right to discontinue the public service. Mandamus is not excluded by other adequate remedy afforded by law. The relators are not improper parties.

A writ of mandamus, an appropriate proceeding brought by the State to compel a railroad common carrier to restore its track and depot and to continue the public service of a common carrier therewith, is not required to set out all matters that may show the dislocation of the track, the closing of the depot and the discontinuance of the public service to be not within the lawful rights of the respondent. Nor is the writ required to negative rights to discontinue the service that might be claimed by the respondent. See 38 C. J. 872; State ex rel Mayor, 22 Fla. 21.

An unlawful dislocation of the track and discontinuance of the depot and the public service being sufficiently alleged by the State as a predicate to the command of the writ to resume the service or to show cause for not doing so, it is incumbent upon the respondent to comply with the command of the writ, or to show by definite and sufficient averments, a legal defense to the writ. The alternative writ issued at the instance of the State by its proper officers sufficiently alleges a breach of public duty, and is not subject to the motion to quash. The respondent must perform the command of the writ, or by appropriate pleading show a legal right justifying the alleged breach of public duty.

The allegations of the alternative writ that respondent unlawfully and in violation of its duty to the State and to the public, and without the consent of the State Railroad Commissioners, dismantled the described track, etc., taken with the other allegations of the writ, sufficiently

allege a breach of a public duty and the right of the State to appropriate remedy. This does not preclude the respondent from averring by answer as a defense to the command to restore, if such be the fact, that it had authority to so discontinue the particular public service from the Interstate Commerce Commission, a superior authority in the premises, and that the consent of the State Railroad Commission is not necessary in the particular matter. If a *statute* permitted the dismantling and abandonment alleged or dispensed with the necessity for a permissive order from the State Railroad Commission, the Court could take judicial notice of the statute, and the alternative writ would be quashed; but if the respondent has permission from the Interstate Commerce Commission, the dominant authority, that is a fact peculiarly within the knowledge of the respondent that may be pleaded in defense of the writ, as it could plead a former adjudication of the same controversy by a court of competent jurisdiction.

The State is not required to negative in its alternative writ the existence of matters of fact that may be adduced as a defense to the writ.