A line of railroad from Thomasville, Georgia, to Monticello, Florida, was built by the Savannah, Florida Western Railway Company under a charter granted by the State of Florida authorizing the railroad company to construct, maintain and operate a railroad from Tallahassee and from Monticello to the Georgia-Florida State line. The Atlantic Coast Line Railroad Company, a Virginia corporation, in 1902 acquired the franchise property and the line of railroad of the Savannah, Florida 
Western Railway Company and operated the line of railroad as constructed by the latter corporation to Monticello until August 25, 1927, when it ceased to operate that line and dismantled its track.
An alternative writ of mandamus was issued by this Court directed to the Atlantic Coast Line Railway Company to restore its track from Yustee in Jefferson County; Fla., to Monticello; to maintain it in a reasonably suitable condition to meet the requirements of the public service and to restore the train service and observe the schedules that were in effect thereon prior to August 25, 1927, until permission shall have been lawfully obtained from the proper authorities authorizing such abandonment or to show cause why it refused to do so.
A motion to quash the writ was denied. State ex rel. Davis, v. Atlantic Coast Line Ry. Co., 95 Fla. 14, 116 So. R. 48.
The respondent answered that it abandoned the line from Yustee to Monticello by virtue of an order of the Interstate Commerce Commission but that it had extended a *Page 824 
line of railroad formerly but little used and with no connections at Monticello southward into a main through line connection at Perry, Fla., which would give, when put into full operation, direct and speedy access to all peninsular Florida and particularly to the West Coast; that it had located and built a new and well equipped depot on its relocated line convenient and contiguous to the town of Monticello adequate for its needs for years and was now furnishing to Monticello faster, better and more frequent passenger and freight service than before.
A demurrer was interposed to the return on the ground that it was no defense to the writ; that it presented no issue and consisted of averments which were conclusions of law and fact. A motion was also made for a peremptory writ and motion to strike certain parts of the return.
The respondent amended its return and averred that the line from Yustee to Monticello was not a branch line as defined by the writ; that it was an integral part of its interstate line from Thomasville, Georgia, to Monticello, Florida, known as the Thomasville, Georgia-Monticello, Florida Branch, having a connection with its main line from Jacksonville, Fla., to Montgomery, Ala. It denied that dismantling the track from Yustee to Monticello and discontinuing the depot in Monticello deprived that town of railroad facilities and train service over its railroad, but on the contrary it was rendering to that town better freight and passenger service over its line of road; that it had by due authority from the Interstate Commerce Commission provided new and better facilities for the handling of the freight and passenger traffic of the town of Monticello and vicinity and thereby had been authorized to abandon its former service between said station of Yustee and said old depot within the corporate limits of the town of Monticello. *Page 825 
The answer proceeded then to set forth in detail the history and economic reasons as well as the considerations of public service which impelled the railroad to develop a through line of railroad from its line on the Western Peninsula of Florida in a northwesterly direction from Perry in Taylor County to a point at or near the town of Monticello to connect with its Thomasville-Monticello branch; its compliance with all statutory requirements in that regard; the delays in the execution of the plan occasioned by the World War and the taking over of its entire system of railway by the Federal Government; the restoration of the system to the Company and the vesting of complete authority over it in the Interstate Commerce Commission in so far as the same is related to Interstate Commerce including the right to abandon any portion of its line of railroad, the right to grant authority to make expenditures in that behalf and the right to give the respondent authority to issue securities for such expenditures or otherwise.
The answer proceeds with averments in minute detail as to the conditions existing in the year 1924 in the State of Florida rendering it expedient for the respondent in order to adequately serve the public so far as it lay within the scope of its duties in that behalf to construct the connecting link of railway. It set forth the work performed in completing the surveys through Perry to a point at or near Monticello, adopted the resolutions which the Rev. Gen. Stats. of Florida contemplated should be adopted in such case and authorizing the Vice President of the railroad to make and file with the Interstate Commerce Commission an application in behalf of the respondent, showing the present or future public convenience and necessity which required or would require the construction and operation by respondent of the proposed extension or *Page 826 
connection line of railroad from Perry to a point at or near Monticello and to take such further action as might be necessary or advisable that such certificate might be issued by the Interstate Commerce Commission. A copy of that resolution is attached to the answer and made a part of it.
That resolution shows it to have been the purpose of the respondent to make such showing as the facts warranted as would be necessary to obtain from the Interstate Commerce Commission the Certificate of Public Convenience and Necessity which would authorize the construction of the proposed connection.
The answer avers that the application was duly made to the Interstate Commerce Commission. It was accompanied by a showing as to the convenience which the proposed extension would afford to the public; the route and termini of the line which showed it to be
 From a point at or near the station known as Perry, on the line of this Company's railroad in Taylor County, in a northwestwardly direction through Taylor and Madison Counties into Jefferson County, and through said Jefferson County to a point at or near Monticello, in the said County of Jefferson.
A map drawn to a scale was exhibited to the Interstate Commerce Commission showing the location of the proposed extension. A copy of the map is attached to the answer and made a part of it. The map shows that the town of Monticello lies partly in Sections 19, 30 and 31 of Township 2 North, Range 5 East and partly in Sections 24, 25 and 36 of Township 2 North, Range 4 East covering about a mile and one-third square. It showed the line of road extending from a point near the Georgia line in a southeasterly direction to a point in Monticello about *Page 827 
six thousand feet east of the west boundary line of the town where the depot was located. It also showed the line of the proposed extension from the point near the Georgia line in almost a direct south line through a point about six thousand five hundred feet east of the western boundary line of the town where the new depot was to be built. It showed the location of the new depot to be south of the old Tallahassee and Monticello highway. It was built in fact a few hundred feet north of the new state highway No. 1, which is a wide highway hardsurfaced or paved from Tallahassee through Monticello.
The answer averred that due notice of the application was published in newspapers having a general circulation in Jacksonville and in Taylor, Madison and Jefferson Counties for three weeks, once each week; that the Interstate Commerce Commission filed a copy of the application for the Certificate of Public Convenience and Necessity with the Governor of Florida on November 13, 1925, and with the Railroad Commission of Florida on November 30, 1925; that both the Governor and the Railroad Commission expressed favorable opinions concerning the proposed extension, the latter directly to the Interstate Commerce Commission.
The answer avers that as a part of the procedure and practice before the Interstate Commerce Commission the respondent was required to give answers to a questionnaire showing the chief purpose and functions of the proposed line; the names of other common carriers with which the proposed new line would connect and the proposed points of track connection; the grade and average curvature of the new line; the development in the volume of Florida traffic; the public convenience served; the estimated cost of the construction which included the following items: *Page 828 
 6 Combination depots at $5,000 ........... $30,000
 1 Brick Station, Monticello .............. 15,000
 Track laying and surfacing:
 * * * *
 4.8 miles track removed at $300 for Monticello 1,440
That the above items covered the building of the new depot at Monticello on the line indicated and the removal of the track from Yustee to the old depot in Monticello. The answer then makes the following averments:
 That after having all the information aforesaid, and after the proceedings aforesaid, said matter came on to be heard before the Interstate Commerce Commission in a proceeding known as Finance Docket No. 5169, and on the 14th day of December, 1925, said Interstate Commerce Commission made its report, whereby it was found that the present and future public convenience and necessity required the construction by respondent of the line of railroad in Taylor, Madison and Jefferson Counties, Florida, as described in said application. That said report recited, among other things, that the cost of construction as reported by respondent was estimated at $1,424,400.00, the same being the aggregate shown by said estimate of costs, exhibit 3, hereto attached. That a complete copy of said report is hereto attached, marked exhibit 4 and made a part hereof. That in accordance with said report a certificate of public convenience and necessity was on the same date duly issued by the Interstate Commerce Commission to this respondent, certifying that the present and future public convenience and necessity required the construction and operation of the extension "described in the application and report aforesaid." Copy of said certificate being hereto attached, marked exhibit 5 and made a part hereof. *Page 829 
 That while said proceedings did not inform the Interstate Commerce Commission of the exact spot on said new line where respondent would build such new brick station for the town of Monticello, said proceedings nevertheless showed that respondent, as a part of said construction, intended to build such new depot at some point convenient and accessible to the Town of Monticello upon said new line; that by the making of said report and order aforesaid the Interstate Commerce Commission impliedly authorized the abandonment of the old depot and station within the corporate limits of the town of Monticello, well knowing that respondent could not be required to maintain two stations and depots to serve the same locality. That by authorizing the expenditure of $1,440.00 for the taking up of said trackage, said Interstate Commerce Commission also intended and authorized this respondent to abandon and take up said piece of trackage from the station of Yustee to the old station in the Town of Monticello.
There are averments about the feasibility of the route; that surveys were made to determine that point; that it was found that a line extending southeast from the old depot in Monticello was impracticable; that the old line from Yustee would be of no use in the construction of the new line presenting difficulties and obstacles in the way of curves and cuts, quicksand and slides that would have greatly increased the cost of construction and would be less efficient to serve the through traffic from and to the south as well as the local traffic to Monticello and vicinity.
Averments were made to the effect that while the proceedings were pending before the Interstate Commerce Commission the Monticello public well knew the location of the proposed new station for the town of Monticello *Page 830 
and acquiesced in and approved it; that newspaper articles favorable to the project were published in the local paper; that the site for the new depot was selected by officers of the railroad in collaboration with citizens of the county and officers of the Jefferson County Chamber of Commerce. These averments are replete in detail showing that much publicity was given to the proposed plans which were carried out. Exhibits numbered 4 and 5 which were attached to the answer and made a part of it consist of the report of Interstate Commerce Commission upon the proposition and all the details accompanying it and the Certificate of Public Convenience and Necessity which was issued by the Commission.
Averments are made showing that to require the railroad to restore the track and maintain both tracks and stations would place undue burden of expense upon the Company, render the service non-compensatory, require a large outlay of money, operate greatly to delay interstate passenger traffic, increase the expense unnecessarily of operating the freight and passenger trains; that it would become necessary to obtain permission from the Interstate Commerce Commission so to do and on this account challenges the jurisdiction of this Court to require it.
It is also averred that the respondent after constructing the new line and erecting the new depot and inaugurating the freight and passenger service at and through the new station, believing that it had full authority from the order and certificate of the Interstate Commerce Commission to do so took up its old trackage between the station Yustee (or Alma) and its old station within the corporate limits of the town of Monticello and closed that station so far as further service for freight and passengers by means thereof was concerned.
To compel the restoration of that track and the freight *Page 831 
and passenger service at the old depot is the purpose of the writ.
The writer of this opinion has deemed it to be suitable to quote fully from the amended answer of the railroad because it will be helpful in construing the meaning of the Certificate issued by the Interstate Commerce Commission, which it is empowered to do under the provisions of the Federal Act. U.S.C.A., title 49, Chap. 1, Sec. 18-21; Fed. Stats. Ann. No. 23 pamphlet supp. p. 44.
Motions were made by attorneys for the relators to strike certain matters from the amended return and demurrers to the return of the respondent were filed and finally a motion for a peremptory writ of mandamus was filed.
The amended return is thus attacked as a whole and in its several parts.
The respondent contends that there was necessarily involved in the judgment exercised by the Interstate Commerce Commission in resolving to and actually issuing the Certificate of Public Necessity and Convenience to the respondent upon the application made by it in the matter of the extension of its interstate line from Perry northward, all incidental matters including the abandonment of the road from the point called Yustee to Monticello and the discontinuance of the depot at the old site.
The Interstate Commerce Act, as amended by the Transportation Act of 1920 (U.S.C.A., Title 49, Chap. 1, Sec. 18-21) was referred to by this Court in the opinion on the motion to quash the alternative writ in this cause and need not be again quoted. See State ex rel. Davis v. Atlantic Coast Line Ry. Co.,supra.
In the exercise of its power to grant or withhold such certificates of necessity and convenience the Interstate Commerce Commission must necessarily use the mental processes of apprehension, perception and discrimination. In *Page 832 
other words, the exercise of such power is and must be the result of judgment: that is, the act of determining what is conformable to public convenience and necessity. To perform that duty it is indispensable that the Commission should be in full possession not only of all salient facts obtainable but should know and consider all related facts directly or indirectly affected by the order or which may tend to influence the granting or refusal of it.
It is inconceivable that in a matter affecting the transportation difficulties and conveniences of a great country, one of the greatest problems which the people confront, a national body vested with the power to determine the measure of public necessity or convenience which would justify the granting or refusal of a permission to do certain railroad construction work involving the curtailment or extension of public transportation service that there should be applied to its procedure and practice the narrow rules applicable to the construction of a plea in abatement in a cause at law.
Nor should the same strict rules for determining whether a former judgment would operate as res adjudicata of a subsequent action be invoked as applicable in deciding whether the Certificate of Public Convenience granted to the respondent constitutes its authority for doing the act of which complaint is made.
In his work on judgment Mr. Freeman says that it is frequently impossible to obtain sufficient data to form any satisfactory conclusion whether a former judgment will operate as res adjudicata of a subsequent action without looking beyond the record in the former suit and ascertaining from any competent evidence what were the real issues brought before the court and necessarily entering into the consideration of the judgment. And whether the issues in the former action sufficiently appear from the record *Page 833 
or are made known by extrinsic proofs the necessity still remains of deciding whether a matter controverted at the former trial was a material issue or a mere matter of evidence brought forward to aid in establishing some material issue. A statement often made, said he, is that an adjudication is final and conclusive not only as to matter actually determined but to every other matter which the parties might have litigated with the subject matter of the litigation and every other matter coming within the legitimate purview of the original action both with respect to matters of claim and of defense. See Freeman on Judgments, 5 Ed. Sec. 671-674; Peacock v. Feaster,52 Fla. 565, 42 So. R. 889; Hay v. Salisbury, 92 Fla. 446, 109 So. R. 617.
In the former opinion in this case it was said: "We think that, in view of these provisions (referring to the Interstate Commerce Act as amended by the Transportation Act of 1920), the conclusion is inescapable that the acquirement of a certificate of convenience and necessity is a prerequisite to the abandonment on the part of the railroad company of any portion of its line of railroad, and that the said act clearly imposes the burden on the carrier by railroad to secure such certificate. When secured, it is a complete defense to an action of this kind, but, until secured, abandonment may be enjoined as provided in paragraph 20."
Applying this holding to the rule announced by Freeman and approved by this Court on the subject whether a former judgment will operate as res adjudicata of a subsequent action we should enquire into every circumstance or question falling within the purview of the respondent's application for the certificate and all matters which the Interstate Commerce Commission had before it and may have considered as material in arriving at the conclusion whether the certificate should or should not issue. *Page 834 
The writer is of the opinion that the rule applicable in questions whether former judgments will operate as resadjudicata of a subsequent action should not be applied strictly in questions of the nature involved in this proceeding. In the first place, the "identities" essential to call into operation the doctrine of res adjudicata cannot exist in a case like the one at bar. The proceeding and practice before the Interstate Commerce Commission is not a suit or cause of action in the sense that there are adverse parties; the issues are not presented and determined by any system of pleading which is subject to the rules of construction applicable in a court of law; the application is in the nature of an ex parte matter although the statute requires the Commission to give notice to the Governor of the State in which the extended line of railroad is proposed to be constructed or abandoned with the right to be heard as to complaints or the issuing of securities; the Commission has before it the whole question of Public Necessity or Convenience involved in the particular application; the evidence on which the application is based is submitted to the Commission with the application or under such rules as to the hearings and other matters as the Commission may from time to time prescribe. The right secured by Section 20 of the Act to the United States, the Interstate Commerce Commission, the regulating body of the State affected, or any party in interest to institute an action to enjoin any violation of the provisions of the section by a railroad company may introduce in such an action as was done in this case different parties from those before the Commission on the original hearing. Yet, a certificate granted is a complete bar to any such action.
The conclusion seems inescapable therefore that all the circumstances having any material bearing upon the application, *Page 835 
whether directly or indirectly affected by or affecting the main or principal subject, which were laid before the Commission should be submitted to this Court to the end that a correct interpretation of the Certificate may be obtained in endeavoring to determine whether the Commission's judgment operates as res adjudicata of this action.
The demurrer to the amended return and the motion to quash should be overruled and denied.
The rule is established in this State that relator by moving for a peremptory writ of mandamus admits the truth of the well pleaded averments of facts that are contained in the answer or return. See State v. Apalachicola Northern Ry. Co., 81 Fla. 394, 88 So. R. 310.
We think that the matter of the removal of the track from Yustee to Monticello and the abandonment of the old depot within the corporate limits of the city constituted a necessary part of the entire subject considered on the application for the Certificate of Public Necessity and Convenience. It was actually considered as involving part of the expense to which the railroad would be subjected in constructing the extension as was the estimated cost of a new depot at Monticello.
According to the answer of the respondent, the Interstate Commerce Commission had presented before it and actually considered the following facts and propositions: first, an interstate railway corporation which desired to extend its railroads from Perry northward to a point where it would connect with its main line from Jacksonville to Montgomery near Thomasville; second, the territory that such an extension would serve embracing the western or gulf counties of southern Florida and counties between them and the Georgia line; third, and the commerce which such an extension would open up or develop; fourth, the *Page 836 
estimated cost of such an extension and whether such cost of construction, maintenance and operation would not be disproportionate to the value of the public service reasonably expected to be rendered; fifth, the route to be taken by the proposed extension whether it would be the most practicable over others that might be selected; sixth, whether the proposed route was over old lines of roads or parts of lines; what obstacles, if any, would have to be overcome in the way of natural difficulties; seventh, what depots or stations would have to be erected and operated; eighth, the cities and towns to be served and upon what sites the depots were to be located, that it might be determined whether the people of the particular localities would be adequately served; ninth, whether the project involved any duplications of service or unnecessary expense at given points and tenth, the nature and character of the protests by the people, if there were any made.
The Commission had before it a map or drawing of the proposed extension drawn to a scale showing the line of the proposed extension, the location of the town of Monticello, the line of road from Yustee to the eastern side of the town and the line of the proposed extension passing to the west of the town and about five or six hundred feet further west from the western boundary of the city than the site of the old depot from that line. In considering the estimated cost of the extension the Commission had before it the estimated cost of the removal of the old track as well as the cost of the erection of a new depot. These were material matters to be considered in determining whether the public necessity and convenience required the maintenance and operation of the two depots in the town of Monticello and the maintenance and operation of two approaches to them.
These views are consistent with those expressed by the *Page 837 
Supreme Court of the United States in Colorado v. United States, 271 U.S. 153, 46 Sup. Ct. R. 452, 70 L.Ed. 878.
The answer also averred the existence of other extrinsic facts which the Commission considered in determining the question whether the Certificate of Necessity and Convenience should be awarded. The proposition as submitted to the Commission clearly involved the matter of change so far as the town of Monticello was concerned not in the service to be rendered by the railroad but in the points to and from which it was to be rendered when the extension should be completed.
This action is not one to enjoin the removal or abandonment of a railroad track and the discontinuance of a depot located at the terminus of that track but it is an action to require the restoration of the same, which were abandoned under the interpretation in good faith of the Certificate of Necessity and Convenience issued by the Commission and pleaded in this cause, and a continuation of the service as formerly rendered. The mere restoration of the track would be futile unless the railroad company could be compelled to continue the service thereby giving to the town a double or additional service at an expense to the railroad and inconvenience to the general public out of proportion to the value or local necessity for such service.
That question is one which is properly addressed to the Interstate Commerce Commission and would require in view of all the circumstances a certificate of public necessity and convenience to justify.
I am of the opinion that the answer is a complete defense to the alternative writ. If it is not, a peremptory writ should be awarded to which only one answer can be made and that is obedience. 38 C. J. 545; 19 Standard Ency. Proc. 281. There is no return to a peremptory writ. It is to be obeyed and a certificate showing obedience is to *Page 838 
be filed. State v. McLin, 16 Fla. 17; State v. Fla. Coast Line Canal Trans. Co., 73 Fla. 1006, 75 So. R. 582.
Nor will a peremptory writ be issued where the respondent cannot be compelled to do all that is required by the alternative writ. State v. Call, 39 Fla. 165, 22 So. R. 266; State v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 So. R. 213, 13 L. R. A. (N. S.) 320 n, 12 Ann. Cas. 359.
The judgment awarding a peremptory writ allows the respondent ninety days in which to file an answer showing what under the law it was required to show by the alternative writ. It allows a defense other than obedience to be interposed to the judgment. It introduces an anomaly in proceedings of this character. The effect is merely another alternative writ in which a longer time is allowed respondent to show cause than the alternative writ first issued allowed.
The State either has the power to command the reconstruction of the track and continuance of the service at the old station or it has no such power. The respondent was given its opportunity to make its answer. It has made its answer which is sufficient or it is not sufficient. If it is not sufficient the writ should issue which requires a certificate showing obedience not what it has already undertaken to show, which was that it had authority from the Interstate Commerce Commission to do the act of which complainant was made. If a doubt exists as to the propriety of the writ it should not issue.
A peremptory writ should not be awarded and then withheld to give an opportunity for further defense. Rather an order should be made that the respondent should have more time in which to show cause why the track should not be rebuilt and service not be resumed at the old station which is all that was required by the first writ. *Page 839 
Since the last page of this dissenting opinion was written and the opinion delivered to the Clerk for filing, the judgment following the majority has been changed eliminating that part of it which allowed the respondent ninety days in which to present, if it could, a Certificate of Convenience and Necessity from the Interstate Commerce Commission; therefore the last three paragraphs of this opinion are inapplicable to the judgment as it now stands.
BUFORD, J., concurs.