RAWLS, Judge.
Richard B. Keating, in his capacity as Director of the State Beverage Department, appeals from a final judgment in mandamus directing him to recall and rescind all official acts pertaining to the reactivation of beverage license Number 433.
This license has been in litigation for a number of years. On February 7, 1962, Thomas Lee, Beverage Director, revoked with prejudice beverage license Number 433 issued to Gala Showplace and operated as Club 23 at 2300 Collins Avenue, Miami Beach, Florida. The order further provided that no license could be issued for that location for two years from October 1, 1962. Writ of Certiorari to review this order was denied by the District Court of Appeal, Third District,[1] on July 19, 1962.
On October 22, 1962, Louis DeKovnick, president of the Empire Corporation (landlord of the premises affected) filed a petition with the Beverage Department for modification of the order alleging therein that he has a 99 year lease on the property; that the premises since the execution of that lease in 1945 have had a beverage license; that he has a large investment in the premises; and that if the revocation order were revoked, the petitioner would become the licensee and would personally operate the premises in a lawful manner. On December 6, 1962 this petition was denied. On December 7, 1962, a supplement to the petition for modification was filed, stating that due to a misunderstanding Mr. DeKovnick, acting for Empire Corporation (on November 17,1962) leased the premises to Shell’s Super Store, Inc. for use as a package store; that this lease provided the landlord would furnish the beverage license, and pursuant to said agreement, *48 Shell’s had already expended the sum of $30,000 on alterations and equipment. The petition again urged modification and pledged that if the license were reinstated, this “trouble spot” will become an “asset to the community”.
On January 24, 1963, Beverage Director Lee amended the order of revocation by deleting therefrom the provision which prohibited the issuance of a license for those premises for the two year period. Lee again amended the order of revocation on January 31, 1963, by retroactively changing the revocation of license 433 to a suspension from September 6, 1962 through January 30, 1963 on the grounds that “the revocation would work an undue hardship on the landlord since the city zoning ordinances prohibit the issuance of a new license for this location”. This amendment provided that license 433 be sold to a bona fide purchaser and application for transfer be made within 30 days. It also authorized late renewal of this license.
On March 12, 1963 Relator Bernard Ausebel as a citizen of Florida, a resident of Miami Beach, and operator of a package store located one block from the premises in question, filed a petition for alternative writ of mandamus alleging the above facts, questioning the authority of the Beverage Director to change a license revocation to a suspension, and praying rescission of the Director’s order dated February IS, 1963 approving the transfer of license 433 to Shell’s City and the order dated January 31, 1963 changing the revocation to a suspension.
Alternative writ issued to which Beverage Director Keating filed responsive pleadings. Shell’s City was recognized as amicus curiae. In due course final judgment in mandamus was rendered upon a finding that petitioner was a proper person to initiate these proceedings and that the Beverage Director was without authority to enter post-final orders modifying or nullifying a final revocation order.
Appellant presents the following two basic questions: 1. Does appellee have legal standing to challenge the action of the Director of the State Beverage Department concerning an alcoholic beverage license in which appellee has no interest? 2. Does the Director of the State Beverage Department have the legal power to set aside an order or revocation once entered?
We answer the first question in the affirmative and the second question in the negative, and thus affirm the trial court’s action in holding that the subject license is not valid.
Appellant argues that Ausebel occupies the same position as Hi-Hat Liquors, Inc. in Baker v. State ex rel. Hi-Hat Liquors.[2] There, Hi-Hat in its petition seeking a peremptory writ of mandamus against Baker, alleged that it was Baker’s competitor and entitled to the unqualified enforcement of the beverage laws.[3] The Supreme Court in setting aside the Circuit Court’s peremptory writ granting the relief sought, held that Hi-Hat could not challenge the legality of Baker’s license. That decision was distinguished by the Circuit Judge in the instant cause by the following observations:
“ * * * The respondent and amici curiae contend that the relator Bernard Ausebel does not have such interest and urge in support of this position. Baker vs. State ex rel. High Hat Liquors, 159 Fla. 286, 31 So.2d 275; Turner vs. City of Miami, 160 Fla. 317, 34 So.2d 551; and Donovan vs. Schott [Fla.], 58 So.2d 847. Baker was a mandamus proceeding but Turner and Donovan were suits in equity. In Baker the facts are somewhat similar to that at bar but with one significant difference. In Baker it was *49 not alleged or otherwise shown that the relator was a citizen and resident of the community in which the places of business of the licensees were located. Indeed it could not be so alleged because relator was a corporation. Therefore, there was not involved in that case a circumstance of the relator being a resident of the community or the municipality involved such as we have in the case at bar. It was recognized by dicta in that case that a petitioner might have appeared in the character of a citizen having no legal or special interest in the result other than having the law executed and the duty in question enforced.”
Unlike the Circuit Judge, we have encountered difficulty in distinguishing the facts in the Baker case and those appearing here. Petitioner’s paragraph 2 in his initial pleading is as follows:
“2. That the Relator is a citizen of the State of Florida, and a resident of the City of Miami Beach, County of Dade, State of Florida, and operates Leo Adler’s Wofford Package Store in the City of Miami Beach, a duly licensed place of business at 2403 Col- . lins Avenue, Miami Beach, Dade County, Florida, by virtue of State Alcoholic Beverage License No. 1510, where alcoholic beverages are sold in sealed containers for consumption off the premises where sold; and that as a result of the unlawful action of the State Beverage Director in approving a transfer of State Alcoholic Beverage License No. 433 to SHELL’S CITY, INC., on February 15, 1963, previously issued to Gala Show Place, Inc., trading as Club 23, 2300 Collins Avenue, Miami Beach, Dade County, Florida, and previously revoked by Respondent, the lawfully operated business of the Relator, one (1) city block away from the unlawfully operated business approved by Respondent, is in jeopardy and suffering an economic loss of approximately fifty per cent (50%) of its normal trade because of the unlawful act of Respondent in reinstating a null and void license.”
Thus, Ausebel, like Hi-Hat, alleges that he was a competitor and entitled to the unqualified enforcement of the laws of the State of Florida, and the natural and practical object being sought by such allegation was the elimination of Shell’s City, Inc. as, a competitor. The gist of the Supreme-Court’s decision in the Baker case is found in the following statements:
“As petitioner, Hi-Hat might have appeared (1) in the character of a citizen having no legal or special interest in the result other than having the law-executed and the duty in question enforced, or (2) in that of a person enforcing a special interest or private right, in which event right to relief' must clearly appear. State [ex rel. Davis] v. Atlantic Coast Line R. Co., 95 Fla. 14, 116 So. 48; State v. Crawford, 28 Fla. 441, 10 So. 118, 14 L.R.A. 253; Florida Central [& P.] R. Co. v. State, 31 Fla. 482, 13 So. 103, 20 L.R.A., 419, 34 Am.St.Rep. 30. Its declared object was to eliminate Baker as a competitor and, in so doing, place the-action in the second category.”
and
“Neither licensee had anything more-than a permit to engage in the liquor business. Each had the same rights and privileges. The law did not restrict competition between them, nor were they allotted any exclusive territorial' areas. The profits or commercial advantages which Hi-Hat might gain in-the elimination of Baker’s competition are too elusive and uncertain to sustain the action.”
As we understand the Baker decision, the Supreme Court said that Hi-Hat could have appeared as a citizen had it not been possessed of the special interest of a competitor,, but since it was a competitor, it could not *50 appear as a citizen and could not by proving a competitive injury “enforce a special interest or private right.” We cannot ascertain any distinction made by the Court due to Hi-Hat’s legal status being that of a corporation rather than an individual.
Irrespective of our view of the applicability of the Baker case as stated above, we are not inclined to follow the conclusion therein stated. This Court has on a previous appearance of this case determined that, amicus curiae Shell’s City,[4] the holder of the subject license, is vitally concerned with the final disposition of the cause. A competitor is the one most likely to challenge the effect of an unlawful act committed by an official purportedly acting under the authority of law. The fact one is a competitor does not place him in a different category from any other citizen. To hold otherwise would in effect encourage the procurement of “straw men” to institute law suits rather than permit interested parties to insist that officials observe the law in carrying out their administrative duties.
We are of the view that even though Ausebel alleged at great length the adverse effect of this license upon his competing beverage business, such action does not preclude his questioning the authority of the Beverage Department to issue an invalid license and that the better view is, as stated by the Supreme Court in State ex rel. Davis v. Atlantic Coast Line Railroad Company: [5]
“ * * * [Wjhere the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result; it being sufficient that he is interested as a citizen in having the law executed and the duty in question enforced.” [Emphasis supplied.]
In analogous cases this Court has consistently held to the view that wide latitude should be granted to those questioning the lawfulness of particular acts of their elected officials, for to hold otherwise would be to encourage a flouting of the law on the part of those possessing office. We conclude that the better view, as to suits of this character, is to permit the challenging of the action by a competitor.
We encounter no difficulty in agreeing with the trial judge’s conclusions upon appellants’ second point, and in disposing of same, we liberally quote from his judgment entered in this cause, viz.:
“For convenience the three pertinent orders of the Director shall be referred to hereafter as:
Order of February 7, 1962 — ‘Revocation’
Order of January 24, 1963 — ‘First Amendment ’
Order of January 31, 1963 — ‘Second Amendment’
“It is my conclusion that the First Amendment was a proper exercise of authority, but that the Second Amendment is void. The license No. 433 became extinct beyond revival on September 6, 1962 and thus has no existence so as to be capable of transfer to another party.
“The Revocation Order was essentially in two distinct separable phases. First, it revoked all privileges under the license which had been held and enjoyed by the licensee, Gala Showplace, Inc. Second, it imposed a quarantine upon the premises, 2300 Collins Avenue, until October 1, 1964, against the exercise of beverage license privileges there by anyone.
“As to the first item, the order was fully executed when the order became final on September 6, 1962. License 433 thereby became a nullity. How *51 ever, the quarantine of the premises would not he fully executed until its full assessed time had elapsed.
“The Director’s powers and duties are wholly statutory. F.S. Chapter 561 [F.S.A.]. * * *
“The power of the Director to issue post-final revocation orders must he found, if at all, in F.S. 561.29, as this is the only section of Chapter 561 dealing with revocation procedures.' The statute is silent with regard to any procedure for reviving or restoring a license which has been revoked by a valid order which has become final in accordance with prescribed proceedings. It does not appear that any such power may be necessarily implied from any powers expressly conferred. Certainly, quasi-judicial orders of administrative agencies should at some time be final, just as judgments of courts. * * *
“There is no inherent power in an administrative agency to modify its quasi judicial orders after they become final and the terms of the order executed. In this case there is no statutory authority for any post-final order procedures to revive a finally revoked license.
“ ‘A board or officer has no power to reinstate a license where the statute merely confers the power to revoke’. 53 C.J.S. 656 (Licenses, Sec. 44e. See also, Wright v. Aldridge, 123 So. 33, 219 Ala. 632.
“An administrative hoard or office which is solely of statutory' creation has only such' limited and special powers as 'are legally conferred upon [it] by the statutes of the state expressly or impliedly for the purpose of carrying out the aims for which they were established.’ 1 Fla.Jur. 218-219 (Adm. Law, Sec. 21) and’cases there cited. See also Bd. of County Com. v. State, 111 So.2d 476, 1955 Fla. [App.]
“ ‘While it is recognized that administrative agencies may possess implied as well as expressed powers, a power which is not expressed must be reasonably implied from the express terms of the statute; or, as otherwise stated, it must be such as is by fair implication and intendment incident to and included in the authority expressly conferred.’ (Fla.Jur. 219 (Adm.Law, Sec. 22). They have no common law powers. F.I.C. ex rel Sp. Dis. Fund v. National Trucking Co. (1958 Fla.App.) 107 So.2d 397.
“ ‘And there must be some basis in a statute for the exercise of jurisdiction and power involved in making an order. State ex rel Burr v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474. If there is a reasonable doubt as to the lawful existence of' a particular power that is being exercised, the further exercise of the power should be arrested. State v. A.C.L.R. Co., 56 Fla. [617] 619, 47 So. 969, 32 L.R.A., N.S., 639.’ Edgerton v. International Co., Inc., (Fla.1956) 89 So.2d 488, 490.”
We find no merit as to other points asserted by appellant. The final judgment in mandamus is
Affirmed.
STURGIS, C J.,' and CARROLL, DONALD K., J., concur. ^

. Gala Showplace, Inc. v. State Beverage Department, 148 So.2d 578 (Fla.App.3d 1962).

. Baker v. State ex rel. Hi-Hat Liquors, Inc., 159 Fla. 286, 31 So.2d 275 (1947).

. In that case the alleged violation was that Baker’s liquor business was within a prohibitive distance of a school.

. See Keating v. State ex rel. Ausebel, 157 So.2d 567 (Fla.App.1st 1963).

. State ex rel. Davis v. Atlantic Coast Line R. Co., 95 Fla. 14, 116 So. 48, 50 (1928).