QUESTION: May the Department of Health and Rehabilitative Services maintain a policy of requiring that an individual exhaust available community resources prior to sponsorship for health care services by the department?
SUMMARY: Pending clarification under state law and appropriate clarification by a responsible federal agency of the state's responsibility under federal law and regulations, the Department of Health and Rehabilitative Services should not maintain a policy of requiring that an individual exhaust available community resources prior to sponsorship for health care services for indigent and semi-indigent crippled children whose parents or legal custodians are financially unable to pay therefor, as provided by s. 391.07, F.S. You state that your question relates primarily to services provided by the Division of Children's Medical Services. The statute prescribing the duty of the division with respect to the providing of health care services to crippled children in indigent or semiindigent cases, s. 391.07, F.S., reads as follows: The [Division of Children's Medical Services] may provide for the surgical and medical care or treatment of indigent and semi-indigent crippled children, provided however, that the division shall, prior to providing such care or treatment, cause to be made a medical, social and economic investigation by qualified personnel, to determine the financial ability of the parents or persons standing in loco parentis to provide the necessary medical care or treatment of said crippled child. If, after investigation, the division is satisfied that the parents or person standing in loco parentis are financially unable, in whole or in part, to pay for the care or treatment, then such crippled children may be cared for and treated by the division under such rules and regulations as may be prescribed by said division. FAC Rule 10J-3.02 adopted by the Division of Children's Medical Services of the department reads as follows: (8) The local Medical Director and his staff shall make every effort to utilize all local resources, including support from local health services, civic groups, voluntary health agencies, voluntary groups, etc., prior to utilizing the Division's funds, provided that such an agreement is in the best interest of the health of the child. (Emphasis supplied.) It can thus be seen that there is no express authorization, under either the statute or the rule, for the department to limit its treatment of indigent or semi-indigent crippled children to those residing in areas of the state in which local resources are not available or to those situations where local resources have in fact been provided, but exhausted or denied prior to applying for state aid. The clear implication of the statute is that the department — within the limits of its duly appropriated and budgeted funds available for such purpose — must provide for the care and treatment of all qualified indigent and semi-indigent crippled children in the state whose parents (or other persons standing in loco parentis) are financially unable to do so, under the rule of statutory construction that, where a statute says a thing "may" be done by a public official which is for the public benefit, it is to be construed that it must be done. Seaboard Air Line Ry. Co. v. Wells, 130 So. 587, 593 (Fla. 1930); AGO 068-21. The rule obviously contemplates that, in those areas in which local resources are available, the department may (and should) carry out its responsibility in this respect by entering into agreements with local agencies for providing the care and treatment needed by a particular indigent child, prior to utilizing the division's funds, if any such agreement is in the best interest of the health of the affected child; and the interest of the child is the controlling criterion. It is not clear, however, that the rule — much less the statute — impliedly authorizes the department to refuse to provide care and treatment to otherwise qualified indigent crippled children in areas where local resources are "available" to provide the treatment, or where local agencies decline to enter into such agreements or otherwise decline to provide medical care and treatment. It is well settled that an administrative agency possesses no inherent power and has only those powers which are expressly granted to it by law, and those which are necessarily implied in order to carry out the powers expressly granted. State ex rel. Greenberg v. Florida State Bd. of Dent., 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974). Keating v. State, 167 So.2d 46 (1 D.C.A. Fla., 1964); Edgerton v. International Company, 89 So.2d 488 (Fla. 1956); Board of County Com'rs of Dade County v. State,111 So.2d 476 (3 D.C.A. Fla., 1959); Molwin Inv. Co. v. Turner, 167 So. 33
(Fla. 1936). As stated in Molwin, An express power duly conferred may include implied authority to use means necessary to make the express power effective, but such implied authority may not warrant the exercise of a substantive power not conferred. If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised by an administrative agency, the further exercise of the power should be arrested. Edgerton v. International Company, supra, 89 So.2d at 490; State v. Atlantic Coast Line R. Co., 47 So. 969 (Fla. 1908). Accord: Attorney General Opinion 075-94. And it seems to me that, from the face of s. 391.07, F.S., alone, considerable doubt is raised as to whether the department may "maintain" the policy here in question under that statute and the rule referred to above. Indeed, it would appear highly unlikely that the statute empowers the administrative officials to adopt and enforce any policy that would restrain in any manner the operative force of the statute or operate as a limitation upon the public benefits intended to be bestowed by it, under the authorities and rules of law referred to above. Moreover, in addition to the authority of the department to maintain a particular policy under state law and regulations, the federal statutes and rules relating to maternal and child health services and services for crippled children are relevant because of the conditions attached to the use of federal funds for those programs. You have directed my attention to the fact that federal regulations "weight" the federal funding formula in favor of rural areas of the states in allotting available federal funds to the states for the crippled children's program and suggest that this formula "is based on the assumption that individuals in urban areas are in less need of support as in many cases alternative services are available from private non-profit and local public resources." However, the rule itself (No. 51a.123, Rules and Regulations, Vol. 39, No. 141, Federal Register) states that this particular fund . . . is apportioned among the States according to the need of each State for financial assistance in carrying out its State plan after taking into consideration the number of children under 21 years in each State and per capita income in each State. The apportionments vary directly with the number of children under 21 years of age in the State, and the number in rural areas of the State, with rural children given twice the weight of children in urban areas. The apportionments vary inversely with State per capita income. . . . Thus, it is equally reasonable to conclude that the rationale of the apportionment formula is the superior ability, and per capita income, of the parents or persons in loco parentis of crippled children in urban areas to pay for the treatment. It is noteworthy, also, that federal grant regulation No. 51a.129(a) provides: No payment will be made from the allotments for maternal and child health or crippled children's services to any state; (a) Which fails to make a satisfactory showing in documents incorporated by reference in the State plan that it is extending the provision of services under its plan with a view to making such services available in all parts of the State by July 1, 1975. Services which must be extended are those to which the State plan applies, . . . . (Emphasis supplied.) I understand that there are five urban areas in which local agencies, including county-owned and tax-supported facilities, provide treatment to indigent crippled children. By rejecting indigent children in these areas for the stateand federallysupported crippled children's program, the state might well be deemed to have failed to make its medical treatment services available to all qualified indigent and semi-indigent crippled children "in all parts of the State," as required by the federal regulation quoted above. And I would hesitate to lend my approval to a policy which might jeopardize the state's right to the federal-aid funds which supply a considerable portion of the funding of the Division of Children's Medical Services and the crippled children's program. (See Items 685-692 of Ch. 75-280, Laws of Florida, the 1975 General Appropriations Act.) See also s.216.212(3), F.S., providing that federal moneys appropriated by Congress to be used for state purpose, "whether by itself or in conjunction with moneys appropriated by the legislature, are hereby reappropriated for the purpose received." (Emphasis supplied.) In these circumstances, it is suggested that, in addition to clarification of the department's authority under state law, a clarification by a responsible federal official of the state's responsibility under the federal law and regulations in conjunction with the requirements of state law on the subject should be obtained before maintaining a policy that might be contrary thereto.